(Decided 19th June, 1894.)

---

## WILLIAM H. ANDERSON vs. N. RUFUS GILL, Executor of MARY A. DODGE.

*Checks—Presentment and Payment—Diligence of Payee.*

The payee of a check deposited it to her credit in her account with the Old Town Bank, indorsed for collection, on the same day it was drawn. The Old Town Bank on the following day presented it for payment shortly before 11 o'clock a. m., during the usual hours of business, and instead of getting cash accepted in lieu thereof the check of the drawees, Nicholson & Sons, on the Western National Bank, distant from the banking house of Nicholson & Sons about three blocks. Nicholson & Sons failed and closed their doors at 1.30 p. m. the same day. Two other checks were given after this by Nicholson & Sons upon the Western National Bank, and both were presented to the bank before 1.30 p. m. of the same day, and were paid or certified by it. Shortly before 3 o'clock p. m. and after the failure of Nicholson & Sons, the Old Town Bank sent the check they had received from Nicholson & Sons, to the Western National Bank and presented it for payment, but it was dis-

honored; whereupon it sent to the banking house of Nicholson & Sons to surrender their check and to demand a return of the original check. This was refused. Later in the day, a notary took a copy of the original check and protested it. In an action by the executor of the payee of the original check to recover the amount thereof, it was HELD:

That the drawer was not liable.

When the payee of a check or his agent takes from the drawee, who has ample funds of the drawer, a check of the drawee on some other bank or banker, instead of money, the payee or his agent must use the utmost diligence to present the substituted check for payment; and a failure to use such diligence will discharge the drawer of the original check on the bankruptcy of the drawee.

And the drawer of the original check having been injured, it is no answer to say he might or would have been equally injured had the holder of the check remained passive until after the failure of Nicholson & Sons.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—The case being tried by the Court, by agreement of counsel, without the aid of a jury, the plaintiff prayed the Court " to find as matter of law that under the agreed statement of facts the plaintiff is entitled to a verdict for the amount of the check mentioned in the declaration and interest thereon from January 15th, 1892."

The defendant offered the two following prayers:

1. That the Court declare as matter of law that under the pleadings and agreed statement of facts in this case the verdict must be for the defendant.

2. If the Court finds as matter of fact that the check of the defendant described in the declaration and drawn in favor of the plaintiff's testatrix for $692.03 was not paid through the negligence of the Old Town Bank, its servants or agents, and that said Old Town Bank was the agent of the plaintiff's testatrix for the purpose of collecting said check, and that the money to pay said check

was to the credit of the defendant with said firm of J. J. Nicholson & Sons, private bankers, upon whom said check was drawn, when said check was presented for payment, then the verdict must be for the defendant.

The Court (PHELPS, J.,) granted the plaintiff's prayer, and rejected those of the defendant. The defendant excepted. The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, ROBERTS, McSHERRY and BRISCOE, J.

*Edward C. Eichelberger,* for the appellant.

*William Knower* and *William S. Bryan, Jr.,* (with whom was *Edward N. Rich* and *N. R. Gill & Sons,* on the brief,) for the appellee.

McSHERRY, J., delivered the opinion of the Court.

On the thirteenth of January, 1892, Anderson, the appellant, drew his check in favor of Mary A. Dodge on J. J. Nicholson & Sons, bankers in the city of Baltimore, for $692.03 and delivered it to the payee the same day. She forthwith deposited it to her credit in her account with the Old Town Bank of the same city, duly endorsed for collection. On the following day, the fourteenth, the Old Town Bank sent the check by its runner to the banking house of Nicholson & Sons where it was presented for payment shortly before eleven o'clock a. m., during the usual hours of business. Anderson had to his credit on deposit with Nicholson & Sons at that time five thousand dollars available for the payment of the check. Instead of getting cash for the check the runner accepted in lieu thereof a check drawn by Nicholson & Sons on the Western National Bank for the precise amount of Anderson's check, and delivered up the latter to Nicholson

& Sons. The banking house of Nicholson & Sons was situated about three blocks distant from the Western National Bank, and it would not have required more than from five to ten minutes for the runner to have walked from the one to the other. But in place of doing this, and presenting Nicholson & Sons' check to the Western National Bank, and getting it cashed or certified, he took it to the Old Town Bank where it remained in the possession of the latter until after Nicholson & Sons failed and closed their doors, at one-thirty p. m. the same day. By this failure Anderson lost the five thousand dollars on deposit to his credit with them. Up to that hour the Western National Bank had ample funds belonging to Nicholson & Sons with which to cash the check given to the Old Town Bank. Shortly before three o'clock, and after the failure of Nicholson & Sons, the Old Town Bank sent the check it had received from Nicholson & Sons in lieu of Anderson's check, to the Western National Bank and presented it for payment, but it was dishonored; whereupon the runner went with it to the banking house of Nicholson & Sons to surrender it, and to demand a return of Anderson's check, but he was unable to gain admittance. About five p. m. of the same day, the cashier of the Old Town Bank was allowed to enter, and at his instance a notary took a copy of Anderson's check and protested the check, of which notice was mailed the same evening to Anderson, and received by him the next day. Subsequently the Old Town Bank replevied the check from the trustees of Nicholson & Sons and still has it—that case not having been disposed of yet. After the Anderson check had been presented to Nicholson & Sons, on the morning of January the fourteenth, and after the runner of the Old Town Bank had surrendered it and accepted in lieu of it the check on the Western National Bank, two other checks were given by Nicholson & Sons upon the Western National Bank—one for $1,900.00 to the

runner of the Merchants National Bank, and one for
$1,800.00 to the runner of the National Bank of Baltimore
—and each of these was presented to the Western National
Bank before one-thirty p. m. of the same day, and paid
or certified by it.

With this state of facts existing, the executor of Mary
A. Dodge sued Anderson to recover the $692.03 due by
him to her when the check was given on January the
thirteenth, 1892; and the inquiry presented by the record
is whether, under the circumstances, Anderson is still liable
for that debt. It was held by the Court below that
he was, and from the judgment against him he has ap-
pealed.

As between the parties to a check, the drawer remains
liable upon it to the holder until the bar of the statute
of limitations supervenes and releases him, if availed of,
unless the omission or neglect of the holder to present
it within a reasonable time after its receipt has resulted
in injury or loss to the drawer. A failure of the bank
which is the drawee of the check, and which held on de-
posit a fund to meet it, by which failure that fund is lost,
presents the usual, if not the only, case in which delay of
the holder in making presentment, or giving notice of dis-
honor, devolves loss upon him. *Dan. Neg. Ins.*, *sec.* 1590.
Speaking generally, what is a reasonable time depends on
the facts of each particular case; but it is thoroughly set-
tled that the reasonable time allowed the holder for pre-
senting a check when he receives it in the same place
where the bank on which it is drawn is located, is till the
close of banking hours on the next secular day; and if in
the mean time the bank fails, the loss will fall on the
drawer. *Dan. Neg. Ins.*, *sec.* 1591; *Byles on Bills, side
page* 14; *Moule vs. Brown*, 4 *Bing.*, *N. C.*, 266; *Bod-
dington & Davis vs. Schlencker*, 4 *Barn. & Adol.* 752.
Every drawer of a check assumes the risk of the drawee's
solvency during that period of time. It is consequently

obvious that Anderson would have continued liable had the check been presented on the fourteenth during business hours, though *after* the failure of Nicholson & Sons. But it was presented to the drawees *before* their failure, and would have been paid when presented had the cash been then demanded; or, had the check on the Western National Bank been presented for payment or certification at any time that day before Nicholson & Sons actually suspended and closed their doors, the money would have been obtained. Whilst, therefore, it is apparent that the mere passivity of the holder—her mere failure to present the check on the fourteenth, prior to the suspension of the drawees—would not of itself have discharged the drawer, yet, another element has entered into the case, and the holder having chosen to present the check before there was any obligation on her part to do so, and having furthermore chosen, through her agent, to surrender it and to accept the drawee's check instead of money, what then, became the degree of diligence which she owed to Anderson in order still to hold him liable? This is the crucial question in the case.

Now, a check on a bank or banker is payable in money, and in nothing else. *Morse, Banks & Banking* (2d edition), *p.* 268. The drawer having funds to his credit with the drawee has a right to assume that the payee will, upon presentation, exact in payment precisely what the check was given for, and that he will not accept, in lieu thereof, something for which it had not been drawn. It is certainly not within his contemplation that the payee should upon presentation, instead of requiring the cash to be paid, accept at the drawer's risk a check of the drawee upon some other bank or banker. The holder had a right to make immediate demand for payment upon receipt of Anderson's check, though she was not bound to do so. When her agent, the Old Town Bank—the collecting bank being the agent of the holder— (*Dodge vs. Freedman's Sav. &*

*Tru. Co.*, 93 *U. S.,* 379) did make demand it was only authorized to receive *money* ( *Ward vs. Smith,* 74 *U. S.,* 451); and the acceptance by the collecting agent of anything else rendered it as liable to the holder as though it had collected the cash. *Fifth Nat. Bank of Pittsburgh vs. Ashworth,* 2 *L. R. A.,* 491. (123 *Penna. St.,* 212.) The acceptance of Nicholson & Sons' check on the Western National Bank was either payment of Anderson's check, or it was not. If it was, as it would be according to the Massachusetts' doctrine (*Duncan vs. Kimball,* 3 *Wall.,* 37), then his liability was extinguished. If it was not a payment, then the holder's collecting agent is responsible to her for having given up the check without payment; and if injury resulted to Anderson by reason of that agent's failure to use due diligence in converting Nicholson & Sons' check into money, then also is Anderson discharged; because the agent's failure to use due diligence is the failure of that agent's principal. But, whilst a check drawn *bona fide* on a banker having funds of the drawer is *prima facie* payment if accepted as cash (*Woodville et al. vs. Reed et al.,* 26 *Md.,* 190) still, in the absence of an express agreement, the acceptance of a check of either the debtor or a third party is, in fact, merely conditional payment, that is, satisfaction of the debt if and when paid (*Haines & Eppley vs. Pearce,* 41 *Md.,* 221); but the acceptance of such check implies an undertaking of due diligence in presenting it for payment, and, if the party from whom it is received sustains loss by want of such diligence, it will be held to operate as actual payment. *Kilpatrick vs. Home B. & L. Association,* 119 *Pa. St.,* 30; *Freeholders of Middlesex vs. Thomas & Martin,* 20 *N. J. Eq.,* 39. What then is the degree of diligence required under such conditions?

The rule fixing the close of business hours of the next secular day as a reasonable time within which a check may be presented, so as to hold the drawer when drawn on a

Anderson *vs.* Gill.

bank in the same place where it is delivered, has relation only to the contract and liability of the parties to the instrument, and does not apply to a check given by the drawee to the payee, or to the agent of the payee, of the original check, upon its surrender. There is no unbending or inflexible rule governing this latter condition of facts, and in the nature of things there could not well be. What would be due diligence under one condition of facts might be negligence under different circumstances; and all that can be definitely laid down is that each case must in this particular be decided upon its own peculiar facts, though in no instance can the liability of the drawer be extended beyond the period which would ordinarily limit it. The holder of a substituted check taken upon the surrender of the original check to the drawee thereof must use such diligence in presenting it for payment as a prudent man would under like conditions use. This imposes no hardship upon the person who voluntarily accepts the drawee's check instead of cash. If he has had ample and abundant time to convert the drawee's check into money, and still omits to do so, he obviously has not used due diligence, and the results of such negligence should not be visited upon the original drawer who was in no way responsible therefor. Whether a delay to present the drawee's check till the close of business hours is due diligence cannot be asserted as an invariable rule. In some instances it might be, whilst in others it would manifestly not be. We have said that what is due diligence or a reasonable time within which to make presentment, depends upon the circumstances of each case; and so the authorities hold. This, too, is by 45 and 46 Vic., ch. 61, sec. 45,—the Bills of Exchange Act—the statutory law of England. Where the facts are undisputed it is a question of law for the Court. *Bell vs. Hagerstown Bank,* 7 *Gill,* 223; *Sasscer vs. The Farmers Bank,* 4 *Md.,* 409; *Staylor vs. Ball & Williams,* 24 *Md.,* 184; *Woodruff vs. Plant,* 41 *Conn.,* 344. That a higher degree of diligence

is demanded under facts like those before us than that which obtains between the parties to the instrument is obvious, because, as we have said, the drawer of the original check must be held to have contemplated that when presented it would be paid in money only, and the payee and drawee have no right, except at their own peril, to substitute some other mode of settlement which results in injury to the drawer. *People &c. vs. Cromwell,* 3 *Cent. Rep.,* 431; *S. C.* 102 *N. Y.,* 477. Had the holder through her agent caused Anderson's check to be certified by Nicholson & Sons, the drawer would have been discharged at once. *First Nat. Bank of Jersey City vs. Leach,* 52 *N. Y.,* 350; *Girard Bank vs. Bank of Penn Township,* 39 *Pa. St.,* 92; *First Nat. Bank of Washington vs. Whitman,* 94 *U. S.,* 343. The reason for this is, that as soon as the check is certified the funds cease to be under the control of the depositor, and pass under the control of the person who procures the certification of the check drawn in his favor. But, whilst the transaction before us was different, the drawer was undoubtedly placed in a position of peril by the act of the collecting agent. When Nicholson & Sons gave to the Old Town Bank their check in exchange for Anderson's, it is a legitimate inference, founded on the well known and universal custom and course of dealing on the part of banks and bankers, that they charged Anderson's account with the amount of that check, and thus reduced the sum to his credit $692.03 below the $5000, which stood there before his check to Mrs. Dodge had been presented and taken up. He could not, probably, have checked out at noon on January the fourteenth, the whole $5000, because his account had, as the necessary result of the act of the Old Town Bank, been reduced the exact amount of his check to Mrs. Dodge, in lieu of which the Old Town Bank had accepted Nicholson & Sons' check on the Western National Bank. His control, therefore, over that much of his deposit might

have been as effectually gone as if his check had been certified by Nicholson & Sons. This circumstance, whilst not making Nicholson & Sons' check to the Old Town Bank a payment, unless specially agreed to be taken as such, serves, though adverted to only by way of illustration, to emphasize the necessity the Old Town Bank was under of promptness and diligence in collecting the check on the Western National Bank, or of having it duly certified with a view both of relieving itself from liability to Mrs. Dodge, and also of holding Anderson liable as drawer, in the event of a refusal by the Western National Bank to honor Nicholson & Sons' check on it. We hold, then, that when the payee of a check, or his agent, takes from the drawee, who has ample funds of the drawer, a check of the drawee on some other bank or banker, instead of money, he, the payee, or his agent, must use the utmost diligence to present the substituted check for payment. 2 *Dan. Neg. Ins.*, 605; 3 *Rand. Com. Paper, sec.* 1105; *Smith vs. Miller*, 43 *N. Y.*, 171;   *S. C.* 52 *N. Y.*, 545; *East River Bank vs. Gedney*, 4 *E. D. Smith (N. Y.)*, 582; *Merchants Nat. Bank vs. Samuel*, 20 *Fed. Rep.*, 664; *People, ex rel. Port Chester Savings Bank vs. Cromwell*, 3 *Cent. Rep.*, 431; *S. C.* 102 *N. Y.*, 477; *Merchants Bank of Baltimore vs. Bank of Commerce, use of Hoffman*, 24 *Md.*, 12; *Chitty on Bills,* (13 *Am. Ed.*), *side page* 400.

Whilst the Old Town Bank was not bound to have made demand upon Nicholson & Sons when it was made, still having made it, and, by its own choice, not having received the cash, it cannot, if it has not used due diligence, claim the right to undo what it had done, and by a subsequent demand put itself in the position it would have occupied had it not made the first demand at the time it did make it, or done the act it then did. "If presentment for payment be actually made on the very day

the check is drawn and payment tendered, the holder cannot then change his mind and leave the funds at the drawer's risk until the next day. He is allowed until the next day as matter of convenience and accommodation to him, and whilst he need not hurry to make present-ment the same day, *having once done so,* he has fixed the money at his own risk." 2 *Dan. Neg. Ins., sec.* 1593, *citing Simpson vs. Pacific Mut. Life Ins. Co.,* 44 *Cala.,* 141.

That Anderson was in fact injured by what was done is manifest, and it is no answer to say he might or would have been equally injured had the holder of the check remained passive until after the failure of Nicholson & Sons. In the one case the injury was the direct result of the payee's negligence after the presentation of An-derson's check to the drawees; in the other, had it oc-curred, it would have been only incident to a mere per-missive or lawful inaction or passivity.

The record shows that the runner of the Old Town Bank presented Anderson's check at the counter of Nich-olson & Sons about ten-forty-five a. m.; that Anderson had at that time ample funds to his credit with the draw-ees for its payment in cash, but that the runner surren-dered the check and accepted Nicholson & Sons' check on the Western National Bank in lieu of the cash. This check was not presented to the Western National Bank for nearly four hours after its receipt, though with due diligence it might have been presented within five or ten minutes after it went into the possession of the agent of the Old Town Bank; and if it had been then presented, or even had been presented within two and a half hours after its receipt, it would have been paid. The record further shows that two other checks for considerable amounts were drawn by Nicholson & Sons on the Western National Bank *after* the delivery of the one to the run-ner of the Old Town Bank, and both of these were pre-

sented and paid or certified before Nicholson & Sons closed their doors. Had the same diligence been used by the Old Town Bank, the check delivered to it would have been paid also. But no such diligence was used, and because it was not, the check was dishonored. Anderson was not privy to this transaction, and obviously ought not to be held responsible for the negligence of the payee's own agent. If he should be, the Old Town Bank would be discharged from all responsibility, though by *its* acts and not by his, the loss would fall on him. He would be held because of *its* failure to use due diligence, though *it* was the *payee's* and not *his* agent.

*Smith vs. Miller,* 43 *N. Y., supra,* was an action for unpaid balance of the price of goods sold by the plaintiffs to the defendants. The defendants set up a defense of payment by a draft drawn by them on James K. Place & Co., of New York, to the order of the plaintiffs. The draft was received by the plaintiffs by mail on the morning of November 19th and was immediately indorsed by the plaintiffs, and about one-thirty in the afternoon of the same day was presented for payment at the counting house of J. K. Place & Co., the drawees, who were merchants in New York in good standing. In payment of the draft J. K. Place & Co. gave their check on the Manufacturers National Bank to the order of the plaintiffs for the full amount. At the time the check was received by the plaintiffs J. K. Place & Co. had funds in that bank to meet the check, which would have been paid, had it been presented on that day. The check was deposited on the same afternoon in the Citizens Bank for collection, and was not presented for payment at the Manufacturers Bank till twelve m. the next day, on the morning of which day J. K. Place & Co. failed, and on that account payment of the check was refused. It was held the plaintiffs could not recover on two grounds, the second of which was their *negligence* in not presenting the check for pay-

ment upon the day they received it, *although they had but two hours on that day in which to present it.* In the course of its opinion the Court said: "But a check is payable instantly; and as between the drawer and payee, the latter has, in analogy to the rules applicable to inland bills of exchange, until the day after the receipt of a check to present it for payment when drawn on a bank in the same place where given and received. But the duty of the plaintiffs to the defendants is not determined by that rule of commercial law. That rule has respect only to the contract and liability of the parties to the instrument. When a check is taken, instead of money, by one acting for others, as was done by the plaintiffs, a delay of presentment for a day *or for any time beyond that within which, with proper and reasonable diligence, it can be presented,* is at the peril of the party thus retaining the check and postponing presentment, as between him and the persons in interest whom he represents. * * * * Two checks drawn later in the day, one for $11,000 and one for $9,500 were presented at the bank and certified before three o'clock of that day, and subsequently paid. The same diligence by the plaintiffs, as was exercised by the holders of these checks, would have obtained the money. * * * * By their delay and neglect they * * * * made the check their own and the defendants were discharged."

*Merchants Nat. Bank vs. Samuel,* 20 *Fed. Rep., supra,* was a suit by the indorsee of a draft against the drawers. It was received by the plaintiffs on June 18th, 1883, and presented for payment on the same day. Instead of paying cash, the drawees gave the plaintiff a check on their bank in New York, which was accepted, and the draft was delivered up to the payee. The check was not presented until June 19th, and was then dishonored. Upon refusal, plaintiff went to the drawees of the draft and returned the check and received the draft back again,

and upon the same day had it protested for non-payment. Thereafter it instituted this suit. The verdict was for defendants. The Court said: "The payment of the draft was to be in cash; and if anything except cash was received, and in consequence thereof the drawer of the draft was damnified, then the damages sustained he has a right to be indemnified for by the negligent party. * * * * The draft should have been paid in cash; and if the plaintiff chose to receive, instead of cash, the drawee's check, it did so at its own risk, and, if any loss followed, the plaintiff must bear the same."

*Merchants Bank of Baltimore vs. Bank of Commerce in New York, use of Hoffman,* 24 *Md., supra,* though not strictly in point throughout, is an express decision as to what constitutes negligence on the part of a collecting agent. There the New York bank transmitted to the Baltimore bank for collection a draft drawn by Hoffman & Co. on Josiah Lee & Co. It was received on the morning of October 30th, 1860, and presented by the runner of the Merchants Bank to the drawees at one p. m. of the same day. Lee & Co. gave the runner a check drawn by them on the Mechanics Bank, and the runner surrendered the draft, and, though the banking house of Lee & Co. and the Mechanics Bank were in the same block, he took the check to the Merchants Bank without presenting it for payment. A little before three p. m. of the same day the check was presented to the Mechanics Bank but dishonored, and Lee & Co. suspended. The runner of the Merchants Bank returned the check to Lee & Co., and got back the draft, and had it protested. Other checks drawn by Lee & Co. *after* the one in question, and aggregating $13,000, were presented and paid. There was evidence tending to show that Lee & Co. were of doubtful credit; and upon other points there was some conflicting evidence. The Court instructed the jury that the Bank of Commerce was entitled to recover from the

Merchants Bank, provided the jury found that the Merchants Bank, in failing to present the check of Lee & Co. for payment before three p. m., was guilty of a want of due care, skill, and diligence in their employment as collectors of the draft, and provided they also found that the check on the Mechanics Bank would have been paid had it been presented for payment between the hours of one and two o'clock of that day. The verdict was for the Bank of Commerce, and the judgment entered thereon was affirmed upon appeal. The negligence which made the collecting agent liable to its principal, the Bank of Commerce, was its delay of *one hour* in presenting Lee & Co.'s check for payment.

It follows from the views we have expressed that the Old Town Bank as the agent of the appellee's testatrix, failed to use due diligence and skill to collect the check given to it by Nicholson & Sons on the Western National Bank, whereby injury was done to Anderson; and, as a consequence, that Anderson was discharged. This being so, there was error in granting the appellee's prayer and in rejecting the appellant's first prayer. The latter should have been granted, and, as it is decisive of the case, the judgment must be reversed, without awarding a new trial.

*Judgment reversed, with costs above and below, without awarding a new trial.*

(Decided 19th June, 1894.)