COMER, receiver, *v.* DUFOUR.

1. Where after the indorsement of a check by an accommodation indorser it was cashed by a bank and duly sent for collection to its correspondent in the city where the bank upon which the check was drawn was located, and there, together with a number of other checks, was duly presented to the drawee for payment, and the runner of the correspondent accepted in payment of all these checks a small sum of money and a check of the drawee upon another bank in the same city, which check had it been promptly presented would have been paid, but was held by the runner or the bank he represented for two or more hours during which time the drawee failed, in consequence of which the check last mentioned was dishonored: *Held,* that under these facts the bank which cashed the original check could not hold the accommodation indorser liable for the amount thereof; and this is true although after the drawee's check had been dishonored the original check was reclaimed and duly protested.
2. The facts as above stated having been agreed upon by the parties, direction is given that the superior court render a final judgment in favor of the defendant.

February 5, 1895.

*Certiorari.* Before Judge FALLIGANT. Chatham superior court. June term, 1894.

LAWTON & CUNNINGHAM and H. W. JOHNSON, for plaintiff. GIGNILLIAT & STUBBS, for defendant.

SIMMONS, Chief Justice.

The receiver of the Central Railroad and Banking Company (of which the Central Railroad Bank is a part) brought suit in a justice's court against J. A. Dufour, upon a check for $75, dated at Baltimore, January 9, 1892, upon J. J. Nicholson & Sons, bankers, by S. H. Brosius, payable to the order of A. M. Brosius, and indorsed by A. M. Brosius and by J. A. Dufour; which check had been protested for non-payment. The case was submitted upon an agreement as to facts, and the justice rendered judgment in favor of the plaintiff. A writ of *certiorari* to this judgment was sustained by the superior court, and the case remanded to the justice's court for a new trial. To this ruling the plaintiff excepted. The facts agreed on were as follows: On January 11, 1892, defendant, accompanied by A. M. Brosius, went to the Central Railroad Bank and requested the assistant cashier, Ulmer, to cash the check in question. Brosius being a stranger to Ulmer, he told defendant he could not cash the check unless it was indorsed by him. Defendant thereupon indorsed it, and it was cashed. On the same day it was forwarded by mail by the Central Railroad Bank to its correspondent in Baltimore, the Citizens National Bank, for collection. The Citizens National Bank received it, and acknowledged the receipt on January 14th, 1892, and on the same day about eleven o'clock, by its regular runner, presented this check, with other checks and drafts on J. J. Nicholson & Sons, to said firm for payment; the aggregate of all the checks and drafts so presented being $1,748. The runner accepted $48 in cash and the uncertified check of J. J. Nicholson & Sons on the Western National Bank for $1,700, in payment for the checks and drafts presented; the custom of Nicholson & Sons being to give their check for the hundreds, and cash for the balance, unless for any reason cash or certified check for the

whole amount were demanded. The checks and drafts so presented to Nicholson & Sons, including the check in question, were cancelled by them and charged up to the drawers thereof. The check book of Nicholson & Sons showed that three or four checks (including one for about $1,900 and another for about $2,200) drawn by them on the Western National Bank after the check for $1,700 was delivered to the runner of the Citizens National Bank, were paid by the Western National Bank before the $1,700 check was presented to it, said check not having been so presented at any time before half past one o'clock. Banking hours in Baltimore were from nine to three o'clock in the day. The Western National Bank was three squares from the bank of Nicholson & Sons, and nearly seven squares from the Citizens National Bank; it was not over five minutes walk from the first place and ten minutes from the latter. Nicholson & Sons failed about 1:45 o'clock of said day; and the Western National Bank refused payment of the check drawn by them for $1,700. The Citizens National Bank replevied the checks and drafts which its runner had delivered to Nicholson & Sons, after two o'clock, and during that afternoon protested all of them for non-payment; and on the next day, returned to the Central Railroad Bank the check sued on here.

1. If the holder of a bank check neglects to present it for payment within a reasonable time, and the bank fails between the time of drawing and the presentation of the check, the drawer is discharged from liability to the extent of the injury he has sustained by such failure; an indorser is discharged absolutely. (*Daniels* v. *Kyle*, 1 *Ga.* 304, s. c. 5 *Ga.* 245; 2 Morse, Banks, 3 ed. §§421, 422.) What is a reasonable time will depend upon circumstances, and the relation of the parties between whom the question arises. When the facts are undisputed, the question is one of law to be determined

by the court.   If the check is received at a place dis-
tant from the place where the bank upon which it is
drawn is situated, and is forwarded by due course of
mail to a person in the latter place for presentment, the
person to whom it is thus forwarded has until the close
of banking hours on the next secular day after he has
received it to present it for payment, unless there are
special circumstances which require him to act more
promptly.   (2 Morse, Banks, 3 ed. §421; Daniel, Neg.
Inst. 4 ed. §1591.)   The holder cannot, however, after
having once presented the check, derive any advantage
from the fact that he could, without being chargeable
with unreasonable delay, have held it longer before mak-
ing presentment.   The first presentment fixes the rights
of the parties.   If the drawee is then ready and willing
to pay, and the holder allows the fund to remain longer
in the hands of the drawee, or if he accepts in lieu of
money a check of the drawee, he does so at his peril.
(2 Morse, Banks, 3d ed. §426; 2 Daniel, Neg. Inst. 4th
ed. §1593; Simpson v. Pacific Mutual Life Ins. Co., 44 Cal.
139;  Anderson v. Gill (Md.), 25 Lawy. Rep. Annot. 200,
s. c. 29 Atl. Rep. 527.)   If his acceptance of the drawee's
check does not of itself discharge an indorser of the
original check, the indorser should certainly be held
discharged if the substituted check is not presented
promptly and the collection is thereby defeated.   Such
presentment cannot be delayed at the risk of the in-
dorser for any time beyond that within which, with
reasonable diligence, the presentment can be made.   In
this case it appears that presentment of the substituted
check could have been made in about five minutes from
the time it was received, the bank upon which it was
drawn being only three squares distant from the bank
of J. J. Nicholson & Sons, the drawees of the original
check; but it was not presented for two hours and a half
or more after it was received by the collecting bank, and

by reason of this delay the collection was defeated. Under these circumstances, we think the collecting bank failed to exercise due diligence, and its principal, the plaintiff in this case, was not entitled to recover against the defendant, the indorser of the original check. In the case of Gill v. Anderson, *supra*, under circumstances almost identical with these, the drawer of the check sued upon was held discharged. In that case, as in the present case, the original check was drawn upon J. J. Nicholson & Sons and was presented to them on the day of their failure, about eleven o'clock A.M., and their check upon the Western National Bank received in lieu of it and not presented until after the failure, though presented within banking hours of the same day. In that case also the original check was recovered from Nicholson & Sons and protested on the same day, but it was held that this made no difference; that although the collecting bank was not bound to have made demand upon Nicholson & Sons when it was made, still, having made it, and by its own choice not having received the cash, it could not, if it had not used due diligence, claim the right to undo what it had done, and by a subsequent demand put itself in the position it would have occupied had it not made the first demand at the time it did make it, or done the act it then did. A full discussion of the subject, with numerous citations of authority, will be found in the opinion of the court in that case. See also Smith v. Miller, 43 N. Y. 171, 3 Am. Rep. 690, 52 N. Y. 545; Merchants Nat. Bank of New York v. Samuel, 20 Fed. Rep. 664; People v. Cromwell, 102 N. Y. 477; also cases cited in note to Anderson v. Gill, in 25 Lawy. Rep. Annot. 200, 201.

2. The facts of this case, as above stated, having been agreed upon by the parties, direction is given that the superior court render a final judgment in favor of the defendant. (See Code, §§218 par. 2, 4284; *Central Railroad v. Kent*, 91 *Ga.* 693.) *Judgment affirmed, with direction.*