# C. M. BERG, Respondent, v. THE FEDERAL RESERVE BANK OF MINNEAPOLIS, Appellant.

### (52 A.L.R. 988, 213 N. W. 963.)

**Banks and banking — checks and drafts — liability of drawer.**

    1. In the absence of express stipulation negativing or limiting liability, the drawer of a check admits the existence of the payee and his then capacity to indorse; and engages that on due presentation the check will be accepted and paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay it. Comp. Laws, 1913, § 6946; Neg. Inst. Law, § 61.

**Banks and banking — obligation of bank — pay checks in money — may be waived by holder of check.**

    2. The legal obligation of a bank is to pay its customers' checks in money; but this obligation may be waived by the holder of the check. He is at liberty to accept any medium of value which the bank may offer; and where upon presentment of a check the holder accepts a draft in payment thereof the check is paid and the drawer thereof discharged from all liability thereon.

Opinion filed May 7, 1927.

Banks and Banking, 7 C. J. § 268 p. 610 n. 16; § 406 p. 681 n. 58. Bills and Notes, 8 C. J. § 83 p. 62 n. 68, 70; § 87 p. 63 n. 87, 88; § 758 p. 545 n. 65; p. 546 n. 66; § 792 p. 569 n. 49 New.

From a judgment of the District Court of Ward County, *Lowe*, J., defendant appeals.

Reversed.

*McGee & Goss* and *A. Ueland*, for appellant.

That the duties of a bank with respect to the collection of a check may by agreement be made different than the law would require without express agreement, all authorities hold. California Nat. Bank v. Utah Nat. Bank, 190 Fed. 318; Minneapolis Sash & Door Co. v. Metropolitan Bank, 76 Minn. 136; Semington v. Stockyards Nat. Bank (Minn.) 203 N. W. 412.

Annotation.—(2) Statutory authority of bank to pay customers' checks in any medium other than money, see 3 R. C. L. 539; 5 R. C. L. Supp. 180.

A collecting bank deals with its depositor as principal and is protected in so doing. Morse, Banks & Bkg. 5th ed. §§ 237, 238.

The collecting bank must follow the instructions of its depositor and is liable if it fails to do so. Bell v. German American Bank (Cal.) 185 Pac. 217; Stuyvesant Bank v. National Mechanics Bkg. Asso. 7 Lans. (N. Y.) 197.

"Where a check or other negotiable paper is deposited with a bank for collection, the relation of principal and agent is created between the depositor and the bank." Security Sav. & T. Co. v. King, 69 Or. 228, 138 Pac. 465.

*E. R. Sinkler* and *G. O. Brekke,* for respondent.

"It is negligence for a collecting bank to transmit its checks directly to the bank or party by whom payment is to be made, with request that remittances be made therefor; 'it being considered that no firm, bank, corporation or individual can be deemed a suitable agent, in contemplation of law, to enforce, in behalf of another, a claim against itself." Pickett v. Baird Invest. Co. 22 N. D. 343.

"A bank to which a check is sent for collection becomes personally liable in case it accepts as payment a draft which proves to be worthless." 3 R. C. L. 617; 1 R. C. L. Supp. 864; 4 R. C. L. Supp. 208; 19 A.L.R. 589, note.

"The acceptance by a bank having a check for collection of a draft in payment, releases the liability of the drawer." 3 R. C. L. 641; 1 R. C. L. Supp. 870.

CHRISTIANSON, J. The plaintiff, Berg, brought this action against the Federal Reserve Bank of Minneapolis to recover $540.25 with interest from October 8, 1923, alleged to be the amount of a check drawn by the plaintiff, Berg, upon the Security State Bank of Hanks and payable to the order of the State Bank of Stady. The case was tried to the court, without a jury, and resulted in a judgment in favor of the plaintiff for the amount demanded and the defendant has appealed.

The material and undisputed facts are as follows: On October 30, 1923, the plaintiff, Berg, had on deposit, subject to check, in the Security State Bank of Hanks the sum of $1,024.25. On that day he went to the State Bank of Stady, in this state, and purchased from

that Bank a draft in the sum of $540.25, drawn by the said State Bank of Stady on the Midland National Bank of Minneapolis and payable to the order of E. E. Engberg, county treasurer of Divide county in this state. Plaintiff paid the State Bank of Stady for said draft by giving to it his check, dated on that day, drawn on the Security State Bank of Hanks, in the sum of $540.25. The plaintiff, Berg, thereupon transmitted the draft to Engberg, the payee named therein, and the Stady Bank placed upon the check it had received from Berg, its general and unrestricted endorsement and transmitted the same to the Midland National Bank of Minneapolis. The Midland National Bank is one of the member banks of the defendant. On November 2, 1923, the Midland National Bank endorsed the check and delivered the same to the defendant for collection. On the same day the defendant sent the check, and certain other items on the Security State Bank of Hanks, by mail direct to the Hanks Bank for payment and remittance. On November 7th the defendant received, from the Security State Bank of Hanks, its draft drawn on the First National Bank of Minneapolis for $995.32, which said draft included the amount of the check in suit. This draft was presented by the defendant for payment on the same day but payment was refused and the draft protested for nonpayment. The Security State Bank of Hanks was closed on November 6, 1923. The Stady Bank refused to pay the draft which it had issued to Engberg for the check in suit and such draft was protested for nonpayment.

It is contended by the appellant that it was authorized to send the check direct to the Security State Bank of Hanks and to accept the draft of that bank in payment by virtue of Regulation J (8) 1920, and defendant's check clearing and collection circular No. 286, issued on the authority of said regulation. A considerable portion of the argument of both parties is devoted to the question of the liability of a bank which undertakes the collection of commercial paper at a distance. In short, it is contended by the appellant that the so-called "New York" rule is applicable to the transaction in suit and that, hence, plaintiff had no contract with the defendant concerning the check or its collection; that defendant has violated no duty which it owed the plaintiff and, consequently, there is no cause of action. On the other hand, the respondent contends that while regulation J (8) 1920 authorized the

defendant bank to send checks for collection direct to the drawee, it did not authorize it to accept a draft in payment. Federal Reserve Bank v. Malloy, 264 U. S. 160, 68 L. ed. 617, 31 A.L.R. 1261, 44 Sup. Ct. Rep. 296. And he further contends that the "Massachusetts," and not the "New York," rule is applicable. We find it unnecessary to determine the correctness of these respective contentions. The plaintiff did not deliver the check in suit to the State Bank of Stady for collection. He delivered it in payment of a draft which he purchased from that bank. As a result of the execution and delivery of the check to the State Bank of Stady certain definite obligations were created. The plaintiff engaged that on due presentation of the check to the Security State Bank of Hanks the check would be accepted and paid according to its tenor, and that if it was dishonored, and the necessary proceedings on dishonor duly taken, he would pay the amount thereof to the holder, or to any subsequent indorser who might be compelled to pay it. Comp. Laws 1913, § 6946; Neg. Inst. Law, § 61. And the State Bank of Stady in accepting the check undertook to present it for payment within a reasonable time and with the understanding that if the check was not so presented that the plaintiff as the drawer thereof would "be discharged from liability thereon to the extent of the loss occasioned by the delay." Comp. Laws 1913, § 7070; Neg. Inst. Law, § 1086; Lloyd Mortg. Co. v. Davis, 51 N. D. 336, 36 A.L.R. 465, 199 N. W. 869.

The State Bank of Stady did not receive the check in suit for collection. The check was received and accepted in payment of the draft which the Stady bank issued and delivered to the plaintiff. The check was the property of the State Bank of Stady and not the property of the plaintiff. From the time of the delivery of the check by the plaintiff to the bank "it became the owner of the check; it could have torn it up or thrown it in the fire or made any other use or disposition of it which it chose and no right of defendant would have been infringed." Burton v. United States, 196 U. S. 283, 297, 49 L. ed. 482, 486, 25 Sup. Ct. Rep. 243. The right to collect the check was vested in the State Bank of Stady and the correlative obligations arising from this right rested upon it. The State Bank of Stady transmitted the check to the Midland National Bank as owner, and not as an agent of the plaintiff for the purpose of collecting the amount of the check from the

bank upon which it was drawn. The legal relations assumed by the plaintiff and by the State Bank of Stady upon the execution and delivery of the check were definite and certain. If the check was duly presented but dishonored and the necessary proceedings on dishonor duly taken, plaintiff was obligated to pay the amount thereof to the holder or to any subsequent indorser who might be compelled to pay it. Comp. Laws 1913, § 6946.

The rights of the plaintiff in this case are only those which arise out of his contract with the State Bank of Stady. "If those rights were affected by the act or omission of the defendant, they were affected only because the contract so stipulated. The defendant's duties arose out of its contract with the initial bank or out of its relations with that bank as owner of the paper." Douglas v. Federal Reserve Bank, 271 U. S. 489, 494, 70 L. ed. 1051, 1053, 46 Sup. Ct. Rep. 554.

A check is payable in money. If, however, the holder of the check is willing to accept anything else in payment, and the drawee bank is willing to give it, the drawer of the check is not concerned. His contract is fulfilled when the check is paid. 5 R. C. L. pp. 498, 499. As is said in Morse's authoritative work on Banks and Banking:

"The legal obligation of the bank is to pay the customer's checks in such paper or coin, and in such quantities of paper or coin of any specific denomination, as the law of the land makes legal tender in the case of any ordinary debt. . . . No other species of tender than that authorized by the laws of the land can relieve the bank from liability to the drawer.

"But this obligation of the bank, at strict law, may of course be waived and dispensed with by the express or implied consent of the holder of the check. He is perfectly at liberty to accept any representatives of value which the bank may offer to him. If he does so accept, that is to say, if, at the time when such representatives are offered to him, he does not object to receive them on the ground that they are not what at law he has a right to demand, then this acceptance operates as a complete waiver of the holder's right to refuse anything save legal tender, and the banker is discharged by this payment, both as towards the drawer and the holder of the check. Even if the holder assents to take the promissory note of the banker, it will discharge the check absolutely and without regard to the fact of whether or not it is

paid at maturity. Payments are usually offered either in whole or in part in the bank bills or notes, either of the bank on which the check is drawn, or of other banks, which circulate as currency in the community. The holder may refuse these, when offered to him, if he wishes; but if he takes them, in the absence of fraud on the part of the bank he assumes as his own the risk of their value. The waiver was perfected by the very act of acceptance, and cannot be afterward undone. *E converso,* if it should happen that the funds are at a premium, the profit also is that of the receiver. In short, the money or representatives of value, on the moment when they have been paid over the counter and have been fairly received and accepted without objection by the payee, become the property of the payee, for good or for ill." 2 Morse, Banks & Bkg. 5th ed. § 247, pp. 45, 46.

The presenting of a check for payment implies that the holder desires and is ready and willing to accept payment. Simpson v. Pacific Mut. L. Ins. Co. 44 Cal. 139; Noble v. Doughten, 72 Kan. 336, 3 L.R.A.(N.S.) 1167, 83 Pac. 1048. If the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon. Comp. Laws 1913, § 7072; Neg. Inst. Law, § 188. If, the holder or his collecting agent presents the check for payment and the drawer has funds on deposit to meet it, which the drawee is then ready and willing to deliver, the contract of the drawer is fulfilled. 5 R. C. L. p. 498. If the holder, instead of receiving money, causes the check to be deposited to the credit of his account in the drawee bank, the check is paid and the drawer released from liability thereon. Burton v. United States, 196 U. S. 283,, 49 L. ed. 482, 25 Sup. Ct. Rep. 243; First Nat. Bank v. Burkhart, 100 U. S. 686, 25 L. ed. 766. And if the holder in lieu of money accepts a draft from the drawee bank, such acceptance amounts to payment and he takes the draft at his own risk and not at the risk of the drawer of the check. Simpson v. Pacific Mut. Life Ins. Co. 44 Cal 139; Anderson v. Gill, 79 Md. 312, 25 L.R.A. 200, 47 Am. St. Rep. 402, 29 Atl. 527; Comer v. Dufour, 95 Ga. 376, 30 L.R.A. 300, 51 Am. St. Rep. 89, 22 S. E. 543; Loth v. Mothner, 53 Ark. 116, 13 S. W. 594; 2 Morse, Banks & Bkg. 5th ed. § 426; Dan. Neg. Inst. § 1591.

The plaintiff cites and relies upon the decision of this court in Pickett v. Thomas J. Baird Invest. Co. 22 N. D. 343, 133 N. W. 1026.

In our opinion the decision cited is authority against, rather than for, the plaintiff. In that case the plaintiff, Pickett, received a check from the Baird Investment Company for certain moneys which that company owed him. The check was drawn on a bank at Lakota in this state. On receipt of the check Pickett indorsed and delivered it to the First National Bank of Duluth, where it was credited to his account. The Duluth bank sent the check direct by mail to the drawee bank at Lakota. That bank accepted the check and sent in payment thereof a draft on a Minneapolis bank. This draft was protested for non-payment. Pickett thereupon brought suit against the Baird Investment Company, the drawer of the check, and it was held that the Baird Investment Company was discharged from liability, and that Pickett could not recover. If the State Bank of Stady had brought suit against the plaintiff, Berg, upon the check in question here, the facts would have been precisely the same as in the Pickett Case. In other words, under the ruling in the Pickett Case, the plaintiff, Berg, was and is discharged from all liability upon the check. The Pickett Case, it is true, lays stress on the negligence of the collecting bank in transmitting the check direct to the drawee bank, rather than on the acceptance of a draft, instead of cash, in payment of the check. It is obvious, however, that the real reason for the discharge of liability on the part of the drawer of the check in the Pickett Case was the acceptance of a draft in payment of the check. If the Lakota bank had paid the check in cash instead of by draft, no injury would have resulted; and if the check had been sent by the Duluth bank, to some other bank at Lakota instead of to the drawee bank and such other bank had accepted the same draft, instead of cash, in payment of the check, the resulting loss would have been precisely the same; and, in either event, the drawer of the check would have been discharged from liability.

The ground on which liability is predicated in favor of the owner of a check against a collecting bank for transmitting the check direct to the drawee bank, or for accepting from such bank a draft in payment of the check, is that the collecting bank was negligent, and breached the obligations which it owed to the owner of the check, in so doing, and that, consequently, the owner of the check is entitled to be compensated by it for the injury which he sustained by reason of such breach of duty. Of course, if the owner of the check sustains no in-

jury, he is entitled to no compensation. Thus, if the collecting bank transmits a check direct to the drawee bank and accepts a draft in payment and the draft is subsequently paid so the owner receives his money, he has no cause of action, even though the collecting bank was negligent in the method it adopted in making the collection. And, clearly, the drawer of a check who is discharged from liability thereon has no cause of action against a collecting bank which accepts the draft of the payee bank in payment thereof. In such case there has been no breach of any duty owing to him, nor has he sustained any injury.

The fact that the State Bank of Stady stopped payment on the draft which it had issued and delivered to the plaintiff, obviously, cannot affect the rights of the parties to this action. That draft belonged to the plaintiff and clothed him with the same rights as though, instead of paying therefor by check, he had paid the State Bank of Stady in actual cash at the time the draft was issued. Whether the defendant, Federal Reserve Bank, was authorized to accept a draft from the Security State Bank of Hanks in payment of the check, and whether such acceptance renders either the Federal Reserve Bank or the Midland National Bank liable to the State Bank of Stady (the owner of the check), for the loss resulting from the acceptance of such draft, is a question not involved in this case and one upon which we express no opinion.

It follows from what has been said that there was and is no such relationship between the plaintiff and the defendant as would entitle the plaintiff to recover for any negligence on the part of the defendant in the collection of the check.

The judgment appealed from is reversed and the action is dismissed.

BIRDZELL, Ch. J., and NUESSLE, BURKE, and BURR, JJ., concur.

Note: The questions (1) whether the New York rule, or the Massachusetts rule, governs in cases where a bank accepts commercial paper for collection at a distance; (2) whether the collecting bank may transmit such paper direct to the drawee bank; and (3) whether the collecting bank may accept in payment of such paper the exchange or draft of the drawee bank, have been set at rest in this state by House Bill No. 249, chapter 92, Laws of North Dakota for 1927, which reads:

"The Bank of North Dakota, or any national bank doing business in this state, or any state banking association as defined in § 519A12, Supplement to the 1913 Compiled Laws, which shall cash, receive for application on an obligation, or for collection or deposit and credit, any check, note, or other negotiable instrument drawn upon or payable at any other bank, savings bank, trust company, or other financial institution located in another city or town, or which should be presented for acceptance or payment in another city or town, whether within or without this state, may, at its option, forward such instrument for presentment or collection directly to the bank on which it is drawn, or at which it is made payable, or may forward it through the Federal Reserve Bank, or other recognized banking agencies, and in payment of such collection such bank or other agency may accept the exchange or draft of the collecting or payor bank. Such method of collection shall, in the absence of a special agreement to the contrary, be deemed to be agreed to by the parties and the forwarding bank and successive agencies shall not be liable to the owner or depositor until actual final payment is received by the collection of such exchange or draft, and until such final collection the depositor, indorser, guarantor, or surety of any check, draft, or other instrument so received, deposited, cashed or credited, shall be liable to the bank to the extent of any money paid out or credit given by it on account of such instrument.

"Provided, however, the bank and every other agency through whose hands such instrument or the proceeds thereof shall pass shall be charged with ordinary business care, and shall be liable for any lack thereof, or for any default or negligence on its part resulting in loss, but not for the default, negligence or lack of care of any other agencies, and the owner or depositor of such instrument shall have a cause of action directly against such bank, or other agencies, for his damage or loss on account of its default or lack of ordinary care."