Gust O. Nelson, Appellant, v. Christian Reformed
Church of Evergreen Park, Appellee.

Gen. No. 39,360.

Opinion filed May 10, 1937.   Rehearing denied May 24, 1937.

TAGE JORANSON, of Chicago, for appellant.

LITSINGER, HEALY, REID & BYE, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff filed his complaint in equity to foreclose a claimed mechanic's lien for $3,000 on the Church's property. The evidence was taken by a master who made up his report recommending a decree in plaintiff's favor. Exceptions were sustained to the report by the chancellor, the bill dismissed and plaintiff appeals.

The record discloses that defendant desired to build a church and on March 16, 1931, entered into a contract for the construction of it with Axel R. Berg and Albin P. Berntson, copartners doing business as Berg & Berntson. The contract price was $23,767. The mason work was sublet by the contractors to plaintiff, Gust O. Nelson, for which he was to be paid $12,307. Other subcontracts were let, the work progressed and payments were made on account by the Church. June 5, 1931, the architect representing the Church made an estimate of the work done by the general contractors and two subcontractors, the total amount being $6,500, $3,000 of which was due to plaintiff, $1,500 to subcontractor Waddington, and $2,000 to the general contractors, Berg & Berntson, and on that day the Church made its check payable to the order of the general contractors for $6,500 drawn on the State Bank of Beverly Hills, located at 95th street and Ashland avenue, and they and the two subcontractors were notified to appear at the architect's office on the following day, Saturday, June 6, 1931, to receive their money. All the parties appeared as requested. It was explained that

the $6,500 was to be divided, as above stated, between the general contractors and the two subcontractors. Thereupon mechanic's lien waivers were executed by the parties respectively and delivered to the architect and the check was then delivered to the general contractors who, together with the plaintiff, Nelson, and the subcontractor, Waddington, went to the Beverly bank to get the money; they reached the bank, the check was presented, and after some discussion all parties agreed to take cashier's checks for their respective amounts in lieu of money and such checks were then issued — one to plaintiff for $3,000, one to Waddington for $1,500 and one to the general contractors for $2,000. Upon receiving the checks each of the three parties signed a receipt,. which was delivered to the general contractors, showing that they had been paid. Thereupon plaintiff went to his own bank, Chicago City Bank and Trust Co., on 63rd street, indorsed the cashier's check by writing his name on the back of it, and deposited it in that bank; the check went through the regular banking channels, but when it was presented Monday morning to the Beverly bank payment was refused, apparently on the ground that the indorsement was improper because plaintiff's signature had not been guaranteed by the Chicago City Bank & Trust Co. The check was returned to that bank June 10th, when the following indorsement was put on the check: "Credited to the Account of the Within Named Payee, Indorsement Guaranteed, Chicago City Bank & Trust Co." Apparently it was again presented for payment on June 11th to the State bank of Beverly Hills but at that time that bank was closed and the check was not paid. Afterward plaintiff filed his verified petition in the circuit court of Cook county in the proceeding brought by the auditor for liquidation of the Beverly bank, seeking to have his

claim for $3,000 allowed as a preferred claim. The court held the claim was not preferred and it was allowed as a general claim; afterward plaintiff was paid $300 on the claim by the receiver, for which amount he gave credit.

June 29, 1931, after the Beverly bank closed, the Church borrowed $25,000 from the Peoples Trust & Savings Bank of Chicago, securing payment by a mortgage on the church property, and this money was paid out from time to time by the Peoples Bank. September 21, 1931, plaintiff filed his claim for a mechanic's lien with the clerk of the circuit court. Prior to that time, on July 31, 1931, the Church delivered to plaintiff an order on the Peoples Trust & Savings Bank for $307, which was due him for work done after June 6, 1931, but this check was not cashed because it was tendered in full of all of plaintiff's claims.

There is other evidence in the record but which we think it is unnecessary to refer to in the decision of this case.

Plaintiff contends that under section 27 of the Mechanic's Lien Law the Church was required to make payment to him direct of the moneys it owed him instead of to the general contractors. This is wholly immaterial under the facts in this case because all of the evidence shows it was entirely agreeable to plaintiff that the check which was made payable to the general contractors be delivered to them, and that plaintiff, with the general contractors and the subcontractor, Waddington, go to the bank on which it was drawn to get their money.

A number of other contentions are made by plaintiff as to whether the cashier's check for $3,000 which he received at the Beverly bank was payment of his claim, but we think it unnecessary to go into a discussion of the arguments made by plaintiff and defendant on

these points because it is clear that if the payee of a check accepts from the drawee bank something in place of cash when there is sufficient money in the bank to pay the check, the transaction is regarded as payment of the check and the drawer discharged. Section 187, par. 209, ch. 98, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 89.209; *McCarty Bros. v. Ft. Dearborn Bank,* 208 Ill. App. 282; 5 Ruling Case Law 498; 21 Ruling Case Law, pp. 67–68; *Berg v. Federal Reserve Bank of Indianapolis,* 55 N. D. 406, 213 N. W. 963, 52 A. L. R. 988; *Merchants' Nat. Bank of N. Y. v. Samuel,* 20 Fed. 664; *Loth v. Mothner,* 53 Ark. 116; *People ex rel. Port Chester Savings Bank v. Cromwell,* 102 N. Y. 477; *State Bank v. Mid City Bank,* 295 Ill. 599.

Section 187 (N. I. L.) provides: ''Where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon.''

In *McCarty Bros.* case (208 Ill. App. 282) it was held that where the holder of a check procures it to be accepted or certified, the drawer is discharged from liability thereon.

In *Metropolitan Nat. Bank of Chicago v. Jones,* 137 Ill. 634, it was held that if the holder of a bank check, instead of demanding its payment, obtains its certification by the bank, he will thereby discharge the drawer of the check from all liability, and its presentment on the next business day after its issue and nonpayment will not in any manner revive the drawer's liability. The court there, after citing Daniel on Negotiable Instruments, said (pp. 639–640): ''If then the holder, on making presentment of the check, instead of demanding and receiving payment, has the check certified and retains it in his possession, he enters into a new and express contract with the bank not within the scope of the legal relations of the parties nor within

the presumed intention of the drawer. . . . The transaction as between the holder and the bank, is substantially the same, in legal effect, as though the holder had received payment and had deposited the money with the bank and received a certificate of deposit therefor. . . .

". . . As between the bank and drawer, certification has the same effect as payment, the funds representing the amount of the check being just as effectually withdrawn from the control of the drawer, and the indebtedness from the bank to the depositor created by the deposit being just as effectually satisfied to that amount in one case as in the other."

In 5 Ruling Case Law it is said (pp. 498–499): "It is the sole function of a check to effect the transfer of money. None of the parties to the instrument can be deemed to contemplate payment in anything else than money, and whenever a check is presented against funds on deposit to meet it, which the drawee is then ready and willing to deliver, the contract of the drawer has been fulfilled. . . . The drawer having funds to his credit, the drawee has a right to assume that the payee will, upon presentation, exact in payment precisely what the check was given for, and that he will not accept, in lieu thereof, something for which it had not been drawn. It is certainly not within his contemplation that the payee should, upon presentation, instead of requiring the cash to be paid, accept at the drawer's risk a check of the drawee upon some other bank or banker."

In 21 Ruling Case Law, in discussing the question of "Delay in Presenting Substituted Check," it is said (p. 69): "The true rule seems to be that when a creditor accepts from a bank its check in payment of a check given by his debtor, the debtor is discharged both on his check and on the indebtedness for which it was

given. In such a case the utmost diligence in collecting the substituted check can only mean that diligence which results in payment, and therefore if the substituted check is not paid the creditor has not exercised the diligence required.''

In 52 A. L. R. 988, it was held that the legal obligation of a bank is to pay its customers' checks in money, but this obligation may be waived by the holder of the check; and where, upon presentment of a check, the holder accepts a draft in payment thereof, the check is paid, and the drawer discharged from all liability thereon. Following the opinion is an exhaustive annotation which is entitled, ''Discharge of drawer or indorser of check by holder's acceptance therefor of something other than money.'' And it is there said, ''It is a general rule, well supported by authority, that if the payee of a check, or his agent, accepts from the drawee bank something else in place of cash, as a draft on another bank, or a deposit slip or credit, when the drawee holds funds of the drawer sufficient to pay the check, and would pay it in cash if demand therefor were made, the transaction will be regarded as a payment of the check, and the drawer discharged.'' And a number of authorities are cited in support of this rule. It is there further said that if instead of demanding and receiving cash, the payee or holder of a check has it certified by the drawee bank, the drawer of the check is discharged.

In *State Bank v. Mid City Bank* (295 Ill. 599), it was held that under the Negotiable Instruments Act, where the holder of the check procures it to be certified, the drawer and all indorsers are discharged from liability thereon and the drawee alone becomes liable for payment.

In the instant case the evidence all shows that when plaintiff, the general contractors, and the subcontractor, Waddington, appeared at the Beverly Bank on

June 6th with the check of the Church for $6,500, it was agreed by all, including plaintiff, that in lieu of the parties receiving cash from the bank, they agreed to take cashier's checks; that when these cashier's checks were issued and delivered by the Beverly bank, the Church, the drawer of the check was discharged under the authorities above cited.

From what we have said it follows that the decree of the superior court of Cook county is correct, and it is affirmed.

*Decree affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.