## The Second National Bank of Baltimore *vs.* The Western National Bank of Baltimore.

*When a Bank's Certification that a Promissory Note is Good, may be Corrected—Errors of Fact—Usage.*

A bank which by mistake has certified a promissory note made payable at its banking house to be "good," can correct such mistake, before rights or liabilities have been incurred, or losses sustained in consequence of it.

Errors of fact may always be corrected before the other party acting upon them as true, has incurred any loss or damage, or assumed any new rights or liabilities. Any usage in conflict with this rule would be so unreasonable and unjust that it could not be maintained.

Appeal from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exceptions.*—At the trial the plaintiff offered the following prayers:

1. If the jury believe that the note offered in evidence had been discounted by, and was owned by the plaintiff on the day of its maturity, and that said note was on that date presented to the defendant, and payment thereof demanded, and that Nolting was paying teller of defendant at the time, and marked the face of said promissory note with a scratch or memorandum, with the initial of his name, then the jury are instructed that said memorandum or scratch, or certification meant that the note was good, and that the defendant had funds in hand to meet the same at that time, and the plaintiff is entitled to recover, notwithstanding the jury may believe that subsequently, on the same day, the said paying teller requested the plaintiff to cancel his said certification.

Second Natl. Bank of Balto. *vs.* Western Natl. Bank of Balto.

2. If the jury believe that the promissory note offered in evidence, had been discounted by, and was owned by plaintiff on the day of its maturity, and the said note was on that day presented to the defendant, and payment thereof demanded, and that Nolting was paying teller of defendant, and as such, made a certification on the face of said note, they are instructed that the effect of said certification was, instead of the payment of money by the defendant to plaintiff, it became a charge by plaintiff against defendant, to be passed through the clearing house on the morning subsequent to the certification of said note; and if the jury further find, that on the day following the said certification, the said promissory note was, according to said usage, duly passed through the said clearing house, and was charged against the defendant, and in favor of the plaintiff, on the books of said clearing house, and that said promissory note was, through the proper officer of said clearing house, received by defendant, and the certification thereof skilfully erased, and a demand of payment made by defendant of plaintiff, and by the paying teller of said plaintiff paid to the defendant through mistake, then said plaintiff is not precluded from recovering in this action, notwithstanding the said defendant may have asked the plaintiff on the day of the maturity of the said note, and after the certification thereof, to erase the said certification.

3. If the jury from the evidence believe that the promissory note offered in evidence had been discounted by, and was owned by the plaintiff on the day of its maturity, and that on that day said note was presented for payment to the defendant, and that Nolting, as paying teller of defendant, certified said note, and on the same day subsequent to the certification thereof, said Nolting requested the plaintiff to erase the certification, and that said plaintiff declined to make said erasure; and if the jury shall further believe, that in consequence of said certification,

Second Natl. Bank of Balto. *vs.* Western Natl. Bank of Balto.

the plaintiff has been precluded from obtaining the amount due upon said promissory note, by the refusal of the endorsers thereof to pay the same, or otherwise has suffered loss from the effect of said certification, then plaintiff is not precluded from recovering the amount of its said loss, growing out of said certification in this action; provided, it does not exceed the amount of the promissory note offered in evidence, and interest thereon from its maturity.

And the defendant offered the following prayers:

1. If the jury shall find from the evidence, that when the teller of the defendant certified the note given in evidence to be good, he had been previously requested by the drawers not so to certify it, and did so, overlooking at the time the said request; and that at a later hour in the day discovering his said error, he promptly sent the notice and letter of the drawers given in evidence to the plaintiff, requesting said certification to be erased, and that said notice reached the plaintiff before the return of its runner who held the note so certified; and on the receipt of said notice the plaintiff, by its president, said all right, and at once sent for the endorsers on said note, and informed them of the said certification and of the request for its erasure, and demanded of them as endorsers that they should waive notice of protest, and that said endorsers did accordingly waive protest of said note, then the plaintiff is not entitled to recover against the defendant by reason of its said certification; it appearing that the withdrawal thereof was made in time to enable the plaintiff to hold the endorsers on said note by proper notice, and that the plaintiff did in fact take steps for charging said endorsers, by procuring their waiver of protest on said note.

The defendant filed the following exception to granting the third prayer of plaintiff:

" The defendant excepts to the plaintiff's third prayer, upon the ground that the plaintiff has offered no evidence in the case, to show that it was precluded from obtaining

the amount due upon the promissory note by the refusal of the endorsers thereof to pay the same, or otherwise has suffered loss from the effect of said certification, the evidence in the case being on the contrary that notice of withdrawal of the certification was given in ample time to enable the plaintiff to charge the endorsers on said note, and that the plaintiff did in fact take steps to charge them, by requiring them to waive protest, and that this was all done before three o'clock of the day on which the note matured."

The Court (GAREY, J.,) rejected the plaintiff's prayers, and granted the defendant's prayer.

The plaintiff excepted, and the verdict and judgment being for the defendant, the plaintiff appealed.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER and ALVEY, J.

*William A. Stewart*, for the appellant.

The appellant insists, that the Court below was in error in withholding the evidence offered to show the usage among the banks of Baltimore city in regard to the certification of a promissory note by the paying teller of a bank, and in regard to the power of a bank to erase or withdraw a certification when once made by the teller of the bank at which the note was made payable, from the jury, whatever it may have decided its effect to be upon prayers properly prepared, after the evidence should have been given; the whole system of certification has grown up within a few years, and is still in process of development; and it is not for the Court to say that because one case has been decided in a different jurisdiction, under a custom there prevailing, that, therefore, evidence may not be introduced to show a different usage or custom in Maryland. *Burroughs vs. Langley*, 10 *Md.*, 248; *Gunther, &c. vs. Atwell*, 19 *Md.*, 157; *Bank of Columbia vs. Fitz-*

132          MARYLAND REPORTS.

Second Natl. Bank of Balto. *vs.* Western Natl. Bank of Balto.

*hugh*, 1 *H. & G.*, 239; *Bank of Columbia vs. Magruder*, 6 *H. & J.*, 172; *Raborg vs. Bank of Columbia*, 1 *H. & G.*, 231; *Bell vs. Hagerstown Bank*, 7 *Gill*, 227; *Merchants' Mut. Ins. Co. vs. Wilson*, 2 *Md.*, 217; *The Schooner Reeside, &c., Claimants*, 2 *Sumner*, 567; *Snowden vs. Warder*, 3 *Rawle*, 101.

The Court, having excluded the evidence of usage in the city of Baltimore, the appellant's prayers necessarily fell with the want of proper evidence; but when the appellant shall have been permitted to establish the usage, the justice of its prayers will be manifest. *Willits vs. Phœnix Bank*, 2 *Duer*, 121; *Meads vs. Merchants' Bank of Albany*, 25 *N. Y.*, 143; *Farmers and Mechanics' Bank of Kent Co. vs. Butchers and Drovers' Bank*, 14 *N. Y.*, 623; *Same Case*, 16 *N. Y.*, 125.

The Court was wrong in withdrawing from the jury the facts set forth in plaintiff's third prayer, and assuming, that the withdrawal of certification was made in time to enable the plaintiff to hold the endorser on said note, by proper notice, and that plaintiff did, in fact, take the steps for charging said endorsers, by procuring their waiver of protest of said note. *Boyd vs. McCann,* 10 *Md.*, 118; *Charleston I. & Trust Co. vs. Corner*, 2 *Gill*, 426; *Brown vs. Ellicott*, 2 *Md.*, 82; *Ragan vs. Gaither*, 11 *G. & J.*, 479.

*William F. Frick*, for the appellee.

It is respectfully submitted, as a proposition too plain for argument, that a bank officer, who, in the hurry of business, by mistake, certifies a note to be good at his bank, when either the drawer has no funds there to meet it, or has requested that his note shall not be certified, is at liberty to withdraw his certification, if he does so promptly, on discovering his error, while the note is still in the hands of the party presenting it, and neither he nor any other party has either acted upon or been prejudiced in any way by the mistake. It will hardly be disputed,

OCTOBER TERM, 1878. 133

Second Natl. Bank of Balto. *vs.* Western Natl. Bank of Balto.

that if the teller in this case had, after certifying the note, immediately discovered his mistake, and had, before the runner of the appellant left the counter or banking house, demanded to have the note back again, that he might erase his certification, he would have had a clear right to do so. The error would, in like manner, be equally subject to correction after the runner had left the bank, and while he was on the way to his own bank. It never seems to have occurred to the president of the appellant (until a later day) that he was not bound to accept the withdrawal of the certification, and to treat the note as dishonored by the drawers; for he sent at once for the endorsers, and induced them to waive protest "rather than allow the note to go to protest." Nobody, therefore, was in any way injured or prejudiced by the prompt correction of the mistake on discovery. All parties were precisely in the same situation, as if the note had never been certified at all. *Irving Bank vs. Wetherald*, 36 *N. Y.*, 335.

Brent, J., delivered the opinion of the Court.

There is really but a single question presented in this case, and that is, whether a bank, which by mistake has certified a promissory note, made payable at its banking house, to be "good," can afterwards correct such mistake.

It appears that the Second National Bank held by the endorsement of the payees a promissory note of Tilghman & Drakely, drawn at four months to the order of Carmine & Co., and payable at the Western National Bank, at which bank the drawers kept their deposit account. On the morning of the day on which the note was due, about half past eleven o'clock, the runner of the bank, holding the note, presented it at the banking house of the Western Bank, when it was certified by the paying teller as *good*, by writing upon it in blue pencil mark the initial letter of his name. The runner after leaving the Western Bank, proceeded on his rounds, and reached the Second

134        MARYLAND REPORTS.

Second Natl. Bank of Balto. *vs.* Western Natl. Bank of Balto.

National Bank about one o'clock, when he told the president, Mr. Gilman, that the note had been paid, "meaning thereby that it had been certified."

About one o'clock the same day the teller of the Western Bank, in putting another memorandum on his file, noticed the order of Tilghman & Drakely received that day, and which he had placed upon his file, directing him not to certify their "note to F. H. Carmine & Co., for $1200.00, due to-day." He immediately enclosed the order to the Second National Bank, with a note calling the attention of the bank to it, and requesting that his name might be erased. The messenger left a few minutes after one, and upon his return reported that the president said "all right."

· About the same time a message was sent from the Second National Bank to Messrs. Carmine & Co., the endorsers, requesting them to call at its banking house, and accordingly one of the firm came. The president, Mr. Gilman, stated to him the facts of the certification of the note, and the demand for its erasure. Mr. Carmine expressed his surprise that the note was not paid, and after some conversation with the president consented to waive protest, and at his suggestion wrote on the note, above the endorsement of the firm, "protest waived." All this appears to have transpired not later than two o'clock.

Afterwards, at about three, it became known to the banks and the endorsers that Messrs. Tilghman & Drakely had failed.

Mr. Carmine after leaving the bank went to see Messrs. Tilghman & Drakely, and asked them for security, but they refused.

On the next day the Second National Bank, without erasing the certification, sent the note through the clearing house, debited to the Western Bank, and received the money for it.

Second Natl. Bank of Balto. *vs.* Western Natl. Bank of Balto.

The teller of the Western Bank, upon receiving its clearing house list of that day, found the note enclosed and debited to the bank. He immediately erased his certification, which was in pencil mark, and went with the note to the Second National Bank, where he demanded and received the money for it, and where he left the note.

These are the important facts in this case, and upon them the appellant must rest its right to recover from the appellee the amount of the note.

The presentation and certification of this note were in the regular course. The balances between the banks were to be settled daily through the clearing house, of which association they were members. To accomplish this, the bank holding a note presents it for payment, on the day of its maturity, at the bank where payable. If the drawer has the funds in bank to meet it, it is so certified by the teller, generally by memorandum on the note, and charged to the account of the drawer. It is then returned to the creditor bank, and retained until the following day, when it is used in the clearing house in the settlement of exchanges as an item of credit in favor of the one, and as a charge against the other. As said in the case of the *Irving Bank vs. Wetherald*, 36 *N. Y.*, 337, "The correctness of this certificate is a matter which the certifying bank has the means of knowing, and is bound to state correctly. If the presenting bank relies upon its accuracy, and fails to charge the endorsers as upon non-payment on presentation, the certifying bank is estopped from denying the truth of its statement. Having asserted, of its own knowledge, that the maker had funds in its bank to meet the note, and the presenting bank, having omitted to charge its indorsers in reliance upon such statement, the certifying bank will not be permitted to go behind its own statements. The teller of the bank is the proper officer to make this statement, and his statement binds the bank whether accurate or erroneous." The

136    MARYLAND REPORTS.

Second Natl. Bank of Balto. *vs.* Western Natl. Bank of Balto.

same principles are established in 16 *N. Y.,* 125, and 25 *N. Y.,* 143.

If in the present case the Second National Bank had been misled by the certificate, and relying upon its accuracy had omitted to take steps to charge the endorsers, there can be no doubt the Western Bank would be bound to make good the amount of the note. But the facts are, that the Second National Bank was informed of the error so soon as it was discovered, and in time to fix the responsibility of the endorsers, either by protest, or by getting from them, as it did, a waiver of protest. There is no principle of law better established, than that an error of fact may be corrected in any reasonable time before it is acted upon by the other party relying upon its truth and accuracy.

There can be no such stringent rule of law as would make a memorandum of this description irrevocable the moment it is placed upon the note. If put there in error, like any other error or mistake it may be corrected before rights and liabilities have been incurred or losses sustained in consequence of it. Here the corrected information was received by the bank nearly about the time their runner returned with the note. It gave them ample time and opportunity to act upon it and take the necessary steps to fix the liability of the endorsers. This the proof shows was done, and no damage or loss has been incurred from the mistake of the teller of the Western Bank. But even if steps had not been taken to fix the liability of the endorsers, the Western Bank could not have been held liable, as the corrected information was given in time to do so, and the presenting bank was bound to accept and to act upon it. 36 *N. Y.,* 337.

There is nothing in the fact that this error was not corrected at the clearing house the following day. That was not the proper place to make the correction. One of the fundamental rules of the clearing house association is,

Second Natl. Bank of Balto. *vs.* Western Natl. Bank of Balto.

that errors in the exchanges and claims, arising from the return of checks and other causes, are to be adjusted directly between the banks which are parties therein, and not through the clearing house. And this was promptly done, in the present case, by the Western Bank so soon as it received its clearing house list of the day.

An offer was made by the appellant, and rejected by the Court, to give in evidence the existence of a usage, that a certification made in error could not be revoked before new rights had been acquired on the faith of such certification. That such usage had not been generally acted upon, and understood by the banks is manifest from the proof on the part of the appellant which preceded the offer. But we have no doubt that the proof was offered in good faith. We think, however, it was properly excluded; usage to be binding and effective must be uniform, notorious and reasonable. The idea that any such usage, as offered, was notorious and uniform was precluded by the proof already given. It was unknown to the president of one of the banks immediately concerned in this case, and to the cashier of the other. But the offer was rejected upon the more tenable ground, that even if any such usage existed, it is unreasonable and repugnant to the well settled rule of law. Errors, as we have already said, may always be corrected before the other party, acting upon them as true, has incurred any loss or damage, or assumed any new rights or liabilities. The rule rests upon the soundest principles of reason and justice, and any usage in conflict with it would be so unreasonable and unjust that it cannot be maintained.

It follows from what we have said, that the rulings of the Court of Common Pleas, upon the admissibility of evidence, and upon the several prayers offered, are without error. The judgment will therefore be affirmed.

*Judgment affirmed.*