## In re NORTHRUP et al.

### (Circuit Court of Appeals, Second Circuit. February 11, 1908.)

### No. 83.

1. BANKS AND BANKING—COLLECTIONS—SUBSTITUTION OF FUNDS—DECLARATION OF TRUSTS.

Bankrupts operated the C. bank, and for several years prior to bankruptcy the C. and S. banks had collected paper for each other without credit or charge, no account of their mutual dealings being kept and no balances struck. The C. bank prior to its insolvency had collected a draft on P. for $1,170.29 for the S. bank, but had failed to remit the proceeds or notify the S. bank of the collection until after its assignment, prior to which the S. bank had in its hands $796.23, the proceeds of drafts collected for the C. bank, and on the day of the assignment, but before the C. bank's assignment had been actually executed, the S. bank mailed its draft to the C. bank to cover such collections. After the assignment one of the bankrupts said to the other that the amount in the hands of the S. bank would offset its claim against the bankrupts. *Held* that, the S. bank not having been informed of such declaration until long after the assignment, it was insufficient either to vest it with any title to the collection for which it remitted to the bankrupts or to constitute a declaration of trust.

2. SAME—PAYMENT—MISTAKE OF FACT.

The S. bank having no right to offset the money in its hands belonging to the bankrupts against its claim against them, the payment of the proceeds of the collection by the S. bank to the bankrupts did not constitute a payment through mistake of fact.

Petition for Revision of Proceedings of the District Court of the United States for Northern District of New York, in Bankruptcy.

For opinion below, see 152 Fed. 763.

E. L. Hunt and James Moore, for petitioner.

W. A. Mackenzie, Jr., and B. B. Aylesworth, for respondents.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. In 1905 Walter E. Northrup and Robert A. Hill, who had carried on a banking business in Oneida, N. Y., under the name of the Central Bank of Oneida, became bankrupts. The National Bank of Syracuse applied to the District Court for an order directing the trustees to pay over to it the proceeds of two drafts amounting to $796.23 drawn by said Syracuse Bank in favor of said Central Bank, which proceeds had come into the hands of the trustee. The trustee answered, and the matter was referred to a special master to take evidence and report his findings of fact and conclusions of law. The master took testimony and reported his findings and conclusions to the District Court which disallowed them. The court then, upon the evidence so taken, made its own findings of fact and conclusions of law and granted the application of the Syracuse Bank.

There is no dispute as to the following facts: The Syracuse Bank and the Central Bank had had business relations for several years prior to the bankruptcy of the latter. They received negotiable paper, the one from the other, for collection in their respective territories. But they held such paper for collection only, and no credit was given therefor, and no charge, with an immaterial exception, was made. No accounts of their mutual dealings were kept, and no balances struck. On June 16, 1905, the Syracuse Bank sent to the Central Bank for collection a draft for $1,170.29 upon one Paul, a resident of Oneida. The Central Bank collected this draft the following day, but failed to remit the proceeds or to notify the Syracuse Bank of the collection. Some 10 days later the Central Bank made an assignment in insolvency under the state law. On the day of the assignment the Syracuse Bank had in its hands $796.23, the proceeds of drafts which it had previously collected for the Central Bank. On said day, but before the assignment had actually been executed, the Syracuse Bank mailed its drafts for $796.23 to the Central Bank to cover said collections. The assignee in insolvency collected these drafts, and their proceeds were subsequently turned over to the trustee in bankruptcy. The Syracuse Bank claimed, and the District Court ruled, that at the time the drafts for $796.23 were sent to the Central Bank, the Syracuse Bank had the equitable title to the funds represented thereby—that it had paid over money which it was entitled to retain. The only evidence offered to justify any such conclusion was a conversation between the bankrupts which took place at the Central Bank after the close of business on the day of the assignment. It was testified to by the bankrupt Hill:

"Mr. Northrup asked me how we stood with Syracuse; he said this draft had not been remitted for, and I told him that they owed us practically the same amount; Northrup says that is an offset, so there is nothing to that."

The witness also stated that Northrup said that there was a "stand off" in the accounts with the Syracuse Bank. What Northrup said was undoubtedly true. The Central Bank had not remitted the proceeds of the Paul draft. The Syracuse Bank had not then remitted the proceeds of the drafts which it had collected. The accounts nearly balanced. But this conversation was wholly insufficient to justify a finding that the bankrupts had elected to retain the identical proceeds of the Paul draft and appropriate the moneys collected by the Syracuse Bank in substitution therefor. No entry of any kind was made upon the books of the Central Bank. The conversation was not in pursuance of any suggestion of the Syracuse Bank. The Syracuse Bank was not informed of it until long after the assignment. There was no agreement in the matter of any kind with the Syracuse Bank. The conversation was wholly inadequate to vest in the Syracuse Bank any title—equitable or other—in the collections which it subsequently remitted for, or to operate as a substitution of funds. It did not constitute a declaration of trust. It was merely the talk of the partners in their crisis about their affairs. It was wholly between themselves, and neither affected their rights nor those of other persons.

The District Court also reached the conclusion that the Syracuse Bank remitted the proceeds of its collections to the Central Bank

through a mistake of fact. This conclusion is apparently based upon the assumption that, had the Syracuse Bank been advised of the collection of the Paul draft, it would have set off the accounts. But it does not appear that the Syracuse Bank had any right to make such offset. On the contrary, it seems clear that it had no such right. The bankrupts undoubtedly acted wrongfully in failing to give notice of the collection of the Paul draft. But this was a matter outside the obligation of the Syracuse Bank to remit 'for what it had collected. A payment made in ignorance of an extrinsic fact not affecting the obligation to make it is not a payment through mistake of fact. And even if the Syracuse Bank would have had a right to offset the accounts had it been notified of the collection of the Paul draft, it does not follow that its ignorance of the existence of such right when it forwarded the checks constituted mistake of fact. Franklin Bank v. Raymond, 3 Wend. (N. Y.) 69.

The decision of the District Court is reversed, with costs.