# NATIONAL BANK OF COMMERCE

## *vs.*

## BALTIMORE COMMERCIAL BANK.

### *Certification of Draft—Mistake—Insufficiency of Funds.*

Where a check or draft is certified by a bank by mistake, the mistake may be corrected by cancellation of the certification, so long as the rights of third persons have not intervened.

p. 556

So long as there are in a bank funds of a depositor sufficient to reimburse the bank for the liability involved in its certification of a check or draft drawn on or by the depositor, the bank cannot claim an error in certification by reason of insufficiency of funds.

p. 557

On an issue as to the right of a bank to cancel its certification of a trade acceptance on the ground of mistake, by reason of insufficiency of funds belonging to the owner on deposit in the bank, it was proper, on cross-examination of an officer of the bank, to show that the funds in such drawee's account were applied by the bank on the drawee's indebtedness to it. p. 558

*Decided June 23rd, 1922.*

Appeal from the Superior Court of Baltimore City (GORTER, C. J.).

Action by the Baltimore Commercial Bank against the National Bank of Commerce. From a judgment for plaintiff, defendant appeals. Affirmed.

Of the two checking accounts referred to in the opinion as having been carried by the Hess Steel Corporation with the appellant bank, one, the main account, required the signature of the president or one of the vice-presidents in connection with that of the treasurer or assistant treasurer, on checks drawn thereon. The other account was used to take care of small items, and checks thereon were required to be signed merely by the secretary.

The question which was the subject of the first exception was asked on cross-examination of appellant's cashier, with reference to what became of the funds on deposit with appellant bank to the credit of the Hess Steel Corporation, the answer to the question showing that these funds were applied by the bank in part payment of debts due it by such corporation.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*George Weems Williams* and *Edwin F. A. Morgan,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellant.

*Edward F. Johnson,* with whom was *Roland R. Marchant* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This case arises out of a trade acceptance drawn on May 13th, 1920, by the United Iron & Metal Company on the Hess Steel Corporation for the sum of $5,184.36, payable sixty days after date, which was accepted by the drawee on May 13th, 1920, and made payable at the National Bank of Commerce, and on the same day was discounted with the appellee. On the day of maturity this trade acceptance was presented at the office of the appellant and certified by it. At the time of such certification the Hess Steel Corporation had two checking accounts with the appellant. In one of these, the balance on the morning of July 12th was $7,818.01, but during the morning the appellant received, through the clearing house, checks against this account which brought the balance down to $4,789.40. The second account, designated on the ledgers of the appellant as No. 2, had a balance on the morning of July 12th amounting to $2,767.96, and at the close of business that day, due to current checks, this balance was reduced to $2,725.96. The method of drawing checks against these two accounts differed in that they were

subject to check by different officers, but, in the view we take of the case, that fact becomes of no importance. On the date after such certification and refusal to pay by the appellant, it applied the balances in both of these accounts to certain notes due to it and, on the day following, namely, July 14th, receivers were appointed for the Hess Steel Corporation. It also appears from the record that the president of the appellant was also the treasurer of the Hess Steel Corporation, and the cashier of the bank was the assistant treasurer of the corporation at the time of this transaction.

After the certification of the trade acceptance, but before the close of banking hours on that day, the appellant notified the appellee that it had made an error, and accordingly desired to cancel its certification, and when the trade acceptance was presented for payment, payment was refused. Subsequently, on the same day, the acceptance was duly protested for non-payment, and this suit was brought by the appellee against the appellant to recover on its certification, and resulted in a verdict in favor of the appellee, from which this appeal was taken.

At the outset it is important to note that we are not concerned in this case with the obligation, if any, of a bank to certify an order from one of its customers, but only with the right to cancel such certification under the circumstances set out in the testimony. The general rule is conceded by the appellant to be that, by certification, a bank enters into an absolute undertaking to pay the check or draft when presented (7 *C. J.* 707), but attention is called to the well established exception that where such certification is made by mistake, such mistake may be corrected so long as the rights of third persons have not intervened. 7 *C. J.* 709; *Second National Bank* v. *Western National Bank,* 51 Md. 128.

There is no suggestion in the record that the Hess Steel Corporation had notified the appellant, prior to the certification, not to pay or certify the acceptance when it was pre-

sented. On the contrary, the testimony of Mr. Oster, who was assistant treasurer of the Hess Corporation and cashier of the bank, is that the bank had not received any instructions from the Hess Steel Corporation to stop payment on the acceptance when presented, so that it necessarily follows that the only error that can be urged, as a basis for the cancellation of the certification, was that there were not sufficient funds in the hands of the bank at the time such certification was made. By its certification a bank becomes directly liable to the holder; such act is an acceptance by the bank. (Code, art. 13, sec. 206.) To reimburse itself, the bank may appropriate the funds of its depositor to an equal amount. *Scheffenacker* v. *Hoopes,* 113 Md. 117. But the appropriation is by the bank to reimburse itself for the liability undertaken by it, and so long as there are sufficient funds of the depositor for this purpose, no claim of error in certification by reason of insufficient funds can be successfully made.

There is no question but that the total of the two accounts carried by the Hess Steel Corporation in the appellant bank was a sum amply sufficient to meet this acceptance, and that, so far as the bank was concerned, it had the absolute right to protect itself by reason of such certification from either or both of said accounts. The very best indication of this is the action of the bank on the following day, when it applied both of these accounts to the indebtedness due it by the Hess Corporation. Under these circumstances, we are unable to find any such error, on the part of the bank, in certifying the acceptance, as would justify it in thereafter attempting to cancel it. Although the certification of checks, drafts, etc., by banks has come to be a familiar every day act in our financial transactions, its importance and its far reaching legal effects must not be lost sight of, and while, in a proper case, we regard the exception to the general rule before referred to as fully established (*Second Nat. Bank case, supra*), yet to entitle the bank to free itself from the obligations imposed by its own voluntary act of certification, there must be a clear showing that such act was done in error.

The question embraced by the first exception was proper cross-examination, as it was material in this case to ascertain whether, as a result of the alleged error, the appellant would, in the first instance, have suffered a loss through lack of sufficient funds of the depositor to make good its certification.

The legal principles thus stated have been laid down by the courts of last resort in a number of the states. See opinion of FULLER, C. J., *Reynes v. Dumont,* 130 U. S. 354; *In re Northrup,* 159 Fed. 686; *Times Square Automobile Co.* v. *Rutherford Nat. Bank,* 77 N. J. L. 649; and especially a very complete and learned opinion by JUSTICE CARDOZO in *Carneige Trust Co.* v. *First Nat. Bank,* 213 N. Y. 301.

For the reasons stated no reversible error appears in the action of the court below and the judgment appealed from is therefore affirmed.

*Judgment affirmed, with costs.*

---

ADKINS, J., filed the following dissenting opinion.

The facts of this case are clearly stated in the opinion of the Court, from which opinion, with great reluctance and with the utmost respect, I feel obliged to dissent, because, it seems to me, an important and fundamental principle of banking has been overlooked by the Court, at least in effect, viz: A bank may pay out funds on deposit only in strict compliance with the instructions of the depositor. This principle is so well established that citation of authority would be superfluous.

If that rule is to be observed, a further question arises in this case, viz: Could the bank, having inadvertently violated such instructions in certifying a trade acceptance, of its own motion correct the mistake before there had been any change in the position of the parties?

The latter point was definitely decided in the affirmative in *Second National Bank* v. *Western National Bank,* 51 Md. 128. But it was strenuously argued by appellee's counsel

that the law as established by that case is no longer the law of Maryland, in view of the subsequent passage of the Negotiable Instruments Act, in which there is a provision that the certification of a check by a bank at the instance of the holder releases the drawer and all endorsers from further liability on the check.   But this is simply declaratory of the common law, and was the law of Maryland at the time of the decision in *Second National Bank* v. *Western National Bank, supra.*

A like provision in the Negotiable Instruments Act of New York was ably discussed in *Baldinger, etc., Mfg. Co.* v. *Manufacturers-Citizens Trust Co.,* 156 N. Y. Supp. 445, and it was held that this provision made no change in the law as it was prior to the passage of that act.   This is also recognized in *Carnegie Trust Co.* v. *First National Bank,* 213 N. Y. 301 (decided after the passage of the Negotiable Instruments Act of New York), wherein the Court of Appeals of New York distinguished cases, previously decided by that Court, where mistakes in certification were permitted to be corrected, from the case then before it, without the slightest intimation that the law as established by the earlier cases had in any way been affected by the later act.

Indeed the opinion filed in the case at bar concedes that the right of correction still exists and expressly affirms the 51 Md. case, *supra,* and thus brushes aside the main contention of appellee.   See also *National Exchange Bank* v. *Ginn & Co.,* 114 Md. 190; where the authority of the 51 Md. case is recognized.

But the Court holds that appellant was not injured, because it could have paid the trade acceptance and reimbursed itself out of another fund of the acceptor on deposit with the bank, and emphasizes the fact that it did subsequently apply this other fund towards the payment of the indebtedness of the acceptor to the bank.   The opinion further undertakes to distinguish this case from the 51 Md. case by special emphasis on the fact that here the bank was not requested to refuse to pay the acceptance, whereas in the former case there was such

request.  But this argument ignores the general instructions which had been given the bank in connection with these deposits.

The failure to recognize that the subsequent exercise of the right of the bank to apply *all* deposits of its debtor to the payment of its own claims, was not necessarily inconsistent with its refusal, in dealing with a third party, to disregard the instructions of the owner of such deposits, has led the Court, it seems to me, into serious error.

True, the bank, having in error certified the acceptance, might have taken the risk of paying on it a larger sum than was applicable to it; and if it had done so, it probably could have treated the overdraft as a debt, and applied the money on deposit in the other account to the payment of the debt thus created; but it was under no obligation to choose this alternative rather than correct the mistake, the position of the parties not having changed; and if it did not intend to permit an overdraft at the time of making the certification, then there was clearly such a mistake, assuming the testimony of defendant to be true, as the bank had the right to correct. If it had the right *at that time,* and exercised it in good faith, it is not liable to appellee merely because it subsequently applied the fund in controversy to debts due by the depositor to the bank.  What became of these funds after the certification was withdrawn, is entirely irrelevant, except possibly as bearing on the question of good faith, which was a question of fact for the court sitting as a jury.

This Court certainly did not mean to hold that any liability of appellant to appellee grew out of the refusal to do something which possibly it might safely have done, but which it was under no obligation to do.

It is conceded that both of the deposit accounts belonged to the Hess Steel Corporation, the acceptor, and therefore both accounts were subject to be applied by the bank, as was afterward done, toward the payment of debts due it by the depositor; but it does not follow that the bank could pay out

either fund to third parties except in compliance with the direction given by the depositor as to that account.

Now the uncontradicted testimony in the case is that the smaller account was not payable on orders signed as was the trade acceptance offered in evidence; also that, at the time the certification was withdrawn, the bank had no thought of applying these deposits to debts due it by the depositor.

It may be that the lower court properly refused appellant's prayer for an instructed verdict in its favor, on the theory that the burden was upon it to prove the mistake in making the certification, and its good faith in making the correction; and that the jury was not bound to believe the evidence offered by appellant.

But the court certainly could not properly hold as a matter of law that the testimony offered on behalf of appellant was false either as to the mistake or as to its good faith in making the correction; and this, in effect, it did when it granted plaintiff's first and second prayers. These prayers were as follows:

"The plaintiff prays the court to instruct itself, sitting as a jury, that if it shall find that the instrument in writing offered in evidence by the plaintiff and designated as trade acceptance was duly signed by Jacob S. Schapiro and Harry T. Murray, co-partners, trading as United Iron and Metal Company, that the said instrument was duly accepted in writing by the Hess Steel Corporation and thereafter was endorsed by the said Jacob S. Schapiro and Harry T. Murray, trading as United Iron and Metal Company and discounted by the plaintiff for value and that upon the maturity of the said trade acceptance it was duly presented to the defendant for certification and was certified by it and that thereafter in due course of business the said certified trade acceptance was duly presented to the defendant for payment and that the defendant refused to pay the same, then the verdict shall be for the plaintiff."

"The plaintiff prays the court to instruct itself, sitting as a jury, that if it shall find from the evidence under the plead-

ings in this case that the trade acceptance offered in evidence was duly discounted for value by the plaintiff, and that thereafter it was duly certified by the defendant, and shall further find that there was on deposit with the defendant belonging to the Hess Steel Corporation at the time such certification was made sufficient funds to pay said trade acceptance, then the verdict shall be for the plaintiff."

These prayers entirely ignored the testimony of appellant that the smaller account was not subject to a check or draft signed as this acceptance was, and the further testimony that the acceptance was certified in error and the mistake was corrected without any thought of applying the funds for the benefit of the bank.

The material error in these prayers will at once appear by comparing them with defendant's fifth prayer, which was granted, and with which they are in absolute conflict. That prayer was as follows:

"The defendant prays the court in instruct itself, sitting as a jury, that if it finds that when the trade acceptance mentioned in the evidence was certified there was less than $5,184.35 balance under the name 'Hess Steel Corporation,' then irrespective of what sum of money there was in the account of the Hess Steel Corporation No. 2 in the defendant bank, the verdict should be for the defendant, provided that the court further finds that the defendant notified the plaintiff of this error (if the court so finds) in certifying the trade acceptance before the plaintiff had changed its position or been prejudiced in any way with regard to the trade acceptance."

It needs no citation of authority to support the proposition that where contradictory prayers are granted it is cause for reversal, provided the law is correctly stated in the prayer of the party appealing. If, as I think, defendant's fifth prayer states the law correctly, it follows that the judgment should be reversed.