# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed October 16, 1922.

THE DROVERS' & MECHANICS' NATIONAL BANK OF BALTIMORE
VS.
THE NATIONAL BANK OF BALTIMORE.

*Niles. Wolff, Barton & Morrow* for plaintiff.

*John Hinkley* for defendant.

STEIN, J.—

This suit, brought by the plaintiff, against the defendant to recover the sum of $2,500, with interest from February 25th, 1922, was tried before the Court sitting as a jury. The testimony shows:

That upon the faith of a certificate afterwards shown to be forged the National Bank of Baltimore cashed a check for $2,500, drawn by one Hammond on the Drovers and Mechanics' National Bank of Baltimore, in which bank he then had on deposit a very small sum of money; also then having a deposit in the National Bank of Baltimore in the same name as that of the payee of the check and in which account he also then only had a very small sum. These banks are members of the Clearing House Association of this city; are bound by its rules; which allow a member bank to return before a named hour all "not good items"; the check sued on being such an item. This check went through the Clearing House in ordinary course of business; was delivered to the Drovers and Mechanics' National Bank in due time; was charged against it, and at once turned over to its paying teller for examination; he, because of a temporary shortage of help, did not examine this and other certified checks, until sometime that day after the hour fixed by the rules for return of a "not good item" to the Clearing House.

When he saw the check the paying teller at once knew the certification was forged, and that then Hammond had in bank only a few dollars, much less than the amount of the check; the paying teller immediately brought these facts to the knowledge of the vice-president of the plaintiff, who immediately phoned them to the cashier of the National Bank of Baltimore; the plaintiff claims the cashier, in reply, directed the check be brought to the defendant's bank; the defendant disputes this; on receipt of this phone message, the plaintiff at once sent the check to the defendant, whose officers kept the messenger for some time, and then declined to pay for it, because

not returned within the time limit above named. After several unsuccessful attempts to collect the check through the Clearing House, the plaintiff brought this suit thereon, claiming payment because:

The Clearing House rules above referred to, do not fix a forfeiture; for the failure to return within a named hour "not good item," where such failure did not cause injury to the bank that paid such item.

The defendant refused payment because "such rules can only mean, that errors not corrected within such hour can not be corrected at all and as the plaintiff did not return the check to the Clearing House within the time fixed by such rules, it can't recover, even though such failure did not injure the defendant."

This, therefore, is not a case where a bank at its own peril is presumed to know: (a) its depositor's signature; (b) the state of his account; (c) nor is it one where a bank paid out money under a mistake of fact, but is one which presents the sole question, do the Clearing House Rules prevent a recovery where the plaintiff bank for its own convenience delays examining a check presented to it by the defendant through the Clearing House; and upon finding such a check "not good," at once notified the defendant of this fact; which delay did not harm and could not have harmed it.

The Clearing House is an association of a number of the banks of this city, formed for the purposes hereinafter set out; the exchanges between its members are fixed daily, and the balances adjusted through the Federal Reserve Bank, which always has enough balance to the credit of each member bank to pay any daily balance against it.

The following extracts from the Constitution and By-Laws of the Clearing House show its objects and the rules governing the return of "not good items," viz:

### FROM THE CONSTITUTION.

"The undersigned, banks in the city of Baltimore, for the purpose of effecting *settlement of the* daily balances between them, and for the promotion of their interests, hereby associate together and agree upon the following articles of association:

"Art. II. The objects of the Association are the effecting at one place at fixed time or times, of the daily exchanges between the several associated banks, and *the payment at a designated place of the balances resulting from such exchanges,* and for the promoting of the interests of its members."

Art. VIII—Extract therefrom: "In case of claims arising from checks that are 'not good' or irregular or from other causes, notice must likewise be given before 12 o'clock noon, and the adjustment *may be* (not must be) made *directly between the banks parties thereto,* or at the clearing of returned items held in the afternoon of the same day, as next hereinafter provided. *Upon request made before 12 o'clock noon, any bank shall extend until 1 o'clock P. M. the time for returning items on it as 'not good'.*"

### BY-LAWS.

Art. III—Extract from: "The daily clearing for 'not good items' shall be held at 1 P. M., except on Saturdays, when the hour shall be 12 noon, in the rooms of the Clearing House."

"*The purpose of this clearing is one of convenience and the right of members to return items direct is not restricted,* but it is required of all members to have a representative present for the purpose of receiving items and giving receipts therefor."

"Items missent in the afternoon exchange must be returned by hand the same afternoon, not later than 2.30 o'clock."

The above extracts show that the Clearing House is an association of banks formed entirely for the purpose of *speedily and conveniently adjusting their accounts,* and *settling the resultant balance* of its members between themselves, *and* also shows that the rules governing the member banks have as one of their objects "the fixing of an hour, after which banks sending the checks to the Clearing House are warranted in treating them as paid in their dealings with their depositors or others."

Law of Clearing House, Watson, page 45.

The check in question is a "not good item," the only rules governing which are the extracts from Art. VIII of the Constitution and from the By-Laws above referred to, which in effect say:

A. The daily clearing for "not good items" shall be at 1 P. M., save Saturday, when the hour shall be noon.

B. The purpose of this clearing is *one of convenience*, the rights of members to return items *direct is not restricted*. This right is expressly reserved in the Constitution and By-Laws of the Clearing House.

Under a fair construction, these rules mean either—

A. That a "not good item" may be returned through the Clearing House at the hour named, or

B. At any time direct; in which event under the law bank returning such item takes the risk of prejudice to the other bank.

So that a "not good item" may be returned through the Clearing House before 1 P. M., or may be returned direct at any time, as may suit the pleasure or convenience of the member bank wishing to return it.

The defendant here insists that these rules, the purpose of which is stated in them, is one of convenience, must be construed in this case so as to work a forfeiture of $2,500; merely because for its own convenience, the plaintiff under the authority of the rules elected to return the $2,500 check direct, and not at the 1 P. M. clearing; when such election not only did not in any way injure the defendant, but could not have injured it.

Such a *construction not only is not* warranted by the rules, but is opposed to the Maryland decisions.

In the Second National Bank vs. The Western National Bank, 51 Md. 128, our Court of Appeals held that

A. "A bank which by mistake certified a promissory note made payable at its banking house 'to be good' can correct such mistake *before rights or liabilities have been incurred or losses sustained in consequence of it"*; and that,

B. "Errors of fact may always be corrected *before the other party acting upon them as true*, has incurred any loss or damage, or assumed any new rights or liabilities."

When the check in question was presented the defendant without injury paid it entirely upon its faith in the certification, when a phone inquiry of a few minutes would have shown the forgery; but because the payee was one of its own depositors, and because it knew him and his signature; although he then had only a few dollars to his credit in the defendant's bank, the bank elected to pay the check upon its belief that the certification was good; none of which was due to or the fault of the plaintiff, which not only did not do or omit anything that caused the defendant loss; but upon discovery of the forgery, at once gave notice thereof; the defendant in the meanwhile not having assumed and could not have assumed any new rights or liabilities; so that this delay did not harm the defendant.

The Court of Appeals affirmed the above case in the National Bank of Commerce vs. The Baltimore Commercial Bank, No. 14, April Term, 1922, and a few days ago overruled a motion for reargument.

This doctrine has been followed in a number of cases by the courts of last resort of Massachusetts and of New York—among which are Merchants' National Bank vs. National Eagle Bank, 101 Mass, 281; Ibid. vs. National Commonwealth Bank, 139 Mass. 513; Metropolitan Trust Co. vs. Federal Trust Co., 232 Mass. 363; Citizens' Central National Bank vs. New Amsterdam National Bank, 198 N. Y. 520.

The New York Court held that a Clearing House rule fixing a time for the return of "not good items," "Fixes the time at which a member bank may assume that a check presented to it is good; in order that it may pay out the proceeds to the depositor; and *does not restrict* the bank discovering that a check is 'not good' *to the time limit for returning it, where the situation of the parties has not in the meantime so changed as to cause loss to the bank to which the check is returned."*

The case of the Bank of Commerce vs. Mechanics' American National Bank, 148 Mo. App. 1, enforced a forfeiture under a Clearing House rule, the very words of which are that:

"All checks for other items not returned by 2 P. M. on the day of the receipt shall be deemed to have been paid, with like effect as though such check or other item shall have been paid in currency at that *hour over the counter*, by the bank or trust company on which it was cleared; and, there-

fore, the responsibility of the bank or trust company, through which said item is passed, shall cease as completely as though said check or other item had been in fact paid out in currency over the counter, by the bank or trust company on which it was cleared."

The difference between the rule and those of the Baltimore Clearing House is apparent and shows that the law governing each case depends entirely upon the wording of the Clearing House rules invoked.

It follows that under this doctrine laid down in the above cases the Clearing House rules relied on by the defendant are not a bar to the plaintiff's claim.