## SUBURBAN CONSTRUCTION COMPANY *v.* GEORGE W. PAGE, Receiver.

[No. 39, January Term, 1932.]

*Decided April 13th, 1932.*

356

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Harrison & France,* submitting on brief, for the appellant.

*Herbert Levy,* with whom was *Morris Rosenberg* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This case comes here on an appeal from an order denying a preference to the holder of a certified check drawn by a depositor of the Chesapeake Bank of Baltimore, payment of which was refused by the receiver of the bank.

The appellant contends that the transaction comes within the provisions of section 95 of article 11 of the Code (Supp. 1929), being the Bank Collection Code as enacted by the Acts of 1929, ch. 454; while the appellee contends that the transaction did no more than create the relation of debtor and creditor between the bank and the holder, who is also the payee of the check.

On December 9th, 1930, Hyman Paul Rome, attorney, of Baltimore, represented the Star Realty Company in the purchase of some property from the Suburban Construction Company, appellant. At the conclusion of the transaction on the day named, Mr. Rome's client owed the appellant $6,750.29, for which he gave his two checks to the order of the appellant for $2,650.29 and $4,100, respectively, drawn on the Chesapeake Bank, and, at the request of the appellant, had them certified. As soon as they were certified they were taken to the Old Town branch of the Maryland Trust Company for

deposit, and before 2 o'clock of the same day the cashier of the Old Town bank advised the appellant of the Chesapeake Bank failure. George W. Page, bank commissioner of Maryland, was appointed receiver, and, demand having been made on him for payment of the certified checks, which was refused, the appellant filed its petition praying an order directing the receiver to pay the checks held by the appellant as a preferred claim. The appellee, receiver as aforesaid, filed a combined answer and demurrer, and, after testimony was heard, the petition was dismissed, and this appeal taken.

It is undisputed that all the money represented by the checks, $6,750.29, except $146.25, was money of the Star Realty Company left with Mr. Rome by it to be applied to the purchase of property conveyed by the appellant, and deposited on December 9th, before the checks were certified. Three days before a deposit of $282 was made from the same source, so that he appears to have put up $146.25 himself. According to the record, $6,604.04 of the Star Realty Company's money, and $146.25 of Mr. Rome's, is traceable into these checks. When the checks were certified by the teller of the Chesapeake Bank, charge slips were made out by him against the account of Mr. Rome, and then and thereupon his deposit, to the extent of the checks to the appellant, passed out of his control and into the control of the appellant, and whatever relations there were with regard to the paper was between the appellant and the bank, but just what that relationship may be is what makes this a case.

As the appellant admits, "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check" (Code, art. 13, sec. 208, Uniform Negotiable Instruments Law), but it contends that the money so deposited by Mr. Rome was impressed with a trust in favor of the appellant, and that, in spite of the fact that the certified checks were not presented for payment before the receivership, they still are to be preferred, and cites 7 C. J. 751 as authority for its contention. It is there said: "Where a deposit is made

under such circumstances as to constitute a trust fund in the hands of the bank, such deposit is entitled to be repaid in preference to general creditors, where it can be identified (*Italian Fruit & Importing Co. v. Penniman*, 100 Md. 698, 61 A. 694, 1 L. R. A. (N. S.) 252 and note), and according to some authorities, even though it has been mingled with the general funds of the bank, where it augmented the assets of the bank." The appellant's brief quotes at considerable length from the opinion of Judge Parker in *Schumacher v. Harriett* (C. C. A.) 52 Fed. (2nd) 817, in support of its contention that the deposit of Mr. Rome was impressed with a trust. While that opinion is a clear and exhaustive treatment of the subject, the facts of the case so differ from the one presented as to give the decision no authority in the instant case. There a depositor, Mrs. Harriett, took to a bank checks for $9,193.02, and directed the officers of the bank to buy for her out of the proceeds $8,500 in bonds of the United States. They did not buy the bonds, and credited to her deposit the entire amount of the checks and mixed it with the bank's general funds. The bank failed, and the trial and appellate courts held, inasmuch as there were sufficient cash funds and items on hand at the time of the failure to pay the sum of $8,500, the funds of the bank were impressed with Mrs. Harriett's money as a trust. The same rule was applied by the opinion of the same judge on an almost identical state of facts in the next case. *Schumacher v. Brinson* (C. C. A.), 52 Fed. (2nd) 821. Principles of both law and equity have their application to a state of facts, and a comparison of the facts in the cases cited with those in dispute here shows that the rule applied in one hard case is not necessarily the rule to be applied in another hard case, as this one surely is.

The appellant also urges the application of section 95 of article 11 of the Code (Supp. 1929—Bank Collection Code), as enacted by the Acts of 1929, ch. 454, to the facts of this case. By the second paragraph of that section it is provided that: "Except in cases where an item or items is treated as dishonored by non-payment as provided in section 11 (93), when a drawee or payor bank has presented to it for payment

an item or items drawn upon or payable by or at such bank, and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items, and such drawee or payor shall fail or close for business * * * after having charged such item or items to the account of the maker or drawer thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debtor therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof," or for the balance of items exchanged, "and such owner or owners shall be entitled to a preferred claim," no matter whether such items can be traced and identified, or have "been intermingled with or converted into other assets of such failed bank." Just what is necessary to protect a maker or drawer under the circumstances provided for in the act quoted is aptly illustrated and applied in the case of *Federal Reserve Bank v. Peters,* 139 Va. 45, 123 S. E. 379.

In this case it is undisputed that the certified checks so held by the appellant never were presented to the Chesapeake Bank for payment. The procedure necessary to avail the appellant of the provisions of the act had been started by the deposit of the checks in the Old Town Bank on the day they were certified, but before the close of business on the same day the Chesapeake Bank was closed. It cannot be said that any one, unless it was the appellant, was negligent or at fault, as the Old Town Bank had until the next day to present the checks for payment. *Anderson v. Gill,* 79 Md. 312, 29 A. 527; Code, Supp. 1929, art. 11, sec. 88 (B). The first step, however, in order to bind the assets of the Chesapeake Bank in the hands of the receiver had not been taken, namely, presentation for payment at the counter of the failed bank, before it was closed.

If the appellant, therefore, has any rights now, it is as the

holder and payee of two certified checks which represent the purchase money of property, the cash payment for which was converted by Mr. Rome, the purchaser's attorney, into checks which were certified, and that at the request of the appelllant. The money was deposited and the checks procured by a boy sent to the bank from Mr. Rome's office, whose return was awaited by Mr.Rome and the secretary-treasurer of the appellant. There is nowhere in the record any evidence that the bank was advised of the nature of the business being done, or that the funds so deposited were to be set apart or used in such a way as to make the bank the agent of either party, and thus make it the trustee rather than the depository of the purchase money. Note 31 *A. L. R.* 472. The transaction, therefore, must speak for itself in terms of the statutes of this state, and the adjudicated cases.

By section 206, article 13 of the Code (Negotiable Instruments Law), it is provided that "where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance." The effect of certification, as stated by Judge McSherry in *Anderson v. Gill,* 79 Md. 312, 320, 29 A. 527, 530, is "that, as soon as the check is certified, the funds cease to be under the control of the depositor, and pass under the control of the person who procures the certification of the check drawn in his favor." The certification was not procured by the appellant's officer, but it is admitted by him that it was done at his request, and Mr. Rome "sent the boy out to have them certified and he .went right down to the Old Town bank to deposit them," which was the course the appellant elected to pursue in the collection of the purchase money.

In *Scheffenacker v. Hoopes,* 113 Md. 111, 116, 77 A. 130, 132, it was said: "The legal effect of such a certification is that the funds of the drawer are appropriated to the amount of the check and he is released, while the check is converted into a certificate of deposit upon which the bank becomes the debtor of the holder. * * * The drawer loses control of his. funds through the transaction as absolutely as if he had paid to the bank for the use of the holder of the check a correspond-

ing sum in cash, or as if the check had actually been collected." "By its certification a bank becomes directly liable to the holder. Such act is an acceptance by the bank. Code, art. 13, sec. 206. To reimburse itself, the bank may appropriate the funds of its depositor to an equal amount * * * for the liability undertaken by it." *National Bank of Commerce v. Baltimore Commercial Bank,* 141 Md. 554, 557, 118 A. 855, 856; *National Bank of Baltimore v. Drovers' & Mechanics' National Bank,* 143 Md. 168, 177, 122 A. 12; 7 C. J. 706-709. The relation of a bank certifying the check of its depositor to the holder thereof, as stated in *People v. St. Nicholas Bank,* 77 Hun. 159, 28 N. Y. S. 407, 412, in which preference was denied, and often referred to as a leading case on the subject, is: "There is no trust relationship between such bank and the holder of the check, nor is the bank bound to set apart from its other funds a particular sum for its payment. *First National Bank v. Leach,* 52 N. Y. 350; *Lynch v. First National Bank,* 107 N. Y. 179, 13 N. E. 775; *Bingham v. Goshen National Bank,* 118 N. Y. 349, 23 N. E. 180. These cases are authority for the proposition that by the certification of a check, or the issuance of a certificate of deposit, a bank becomes debtor to the holder of such check, and is not obliged to set apart any portion of its assets as a particular fund to pay such check." See case of *Lloyd v. Butler County State Bank,* 122 Kan. 835, 253 P. 906, and annotations in 51 *A. L. R.* 1030.

There is no charge in the appellant's petition that, at the time the deposit was made and the checks certified, the Chesapeake Bank was insolvent, and that therefore a fraud was perpetrated on the depositor or holder of his certified check (*Pott v. Schmucker,* 84 Md. 535, 554-555, 36 A. 592), and it appears from the bill for the appointment of a receiver that no such reason was given; the ground upon which the appointment of a receiver was prayed being "that the said bank was conducting its business in an unsafe and unauthorized manner, in that its reserve, as required by law, had become exhausted."

In the absence of any other evidence than that the appellant was the holder in due course of a certified check of a depositor in a failed bank, which had not been presented for payment and charged in accordance with the provisions of section 95, article 11 of the Code, Supp. 1929, and with no facts from which an inference of agency of the bank for the holder can be drawn, the order of the chancellor dismissing the appellant's petition should stand.

*Order affirmed, with costs.*